LITTLE CAESAR ENTERPRISES, INC v DEPARTMENT OF TREASURY

Docket No. 194029. Submitted September 9, 1997, at Lansing. Decided December 5, 1997, at 9:05 A.M.

Little Caesar Enterprises, Inc., a franchisor of restaurants, brought an action in the Court of Claims against the Department of Treasury, seeking a refund of single business taxes assessed as deficiencies, and paid under protest, for tax years 1985 to 1989 after the defendant had disallowed the plaintiff from deducting from its tax base the monthly royalties it received from franchisees. The defendant had determined that the royalties, equal to five percent of the monthly gross receipts of each franchisee, were franchise fees that could not be deducted from the tax base pursuant to 1985 PA 27, MCL 208.9(7)(c)(ii); MSA 7.558(9)(7)(c)(ii), which excepts franchise fees from royalties that can be deducted from the tax base pursuant to MCL 208.9(7)(c); MSA 7.558(9)(7)(c). The court, Lawrence M. Glazer, J., granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals held:

The Single Business Tax Act, MCL 208.1 et seq.; MSA 7.558(1) et seq., does not define the term "franchise fee," but incorporates the definition provided for the term by § 3(1) of the Franchise Investment Law, MCL 445.1503(1); MSA 19.854(3)(1). For consistency with the Franchise Investment Law, and in order to avoid rendering unworkable certain provisions of the Franchise Investment Law relating to filing and disclosure requirements for a small franchise and relating to disclosure requirements in a franchisor's offering circular, the term "franchise fee," for purposes of the Single Business Tax Act, must be construed to refer only to the initial fee paid by a franchisee to a franchisor for the right to enter into a business under a franchise agreement.

In this case, the royalties at issue are not franchise fees inasmuch as they were not initial fees paid for the right to enter into business with the plaintiff; the royalties are properly deducted from the plaintiff's tax base.

Reversed.

TAXATION — SINGLE BUSINESS TAX — ROYALTIES — FRANCHISE FEES.

"Franchise fee"—for purposes of the Single Business Tax Act, which prohibits a franchisor from deducting from its tax base a franchise fee received from its franchisee—refers only to the initial fee paid by the franchisee for the right to enter into a business under the franchise agreement; royalties received by the franchisor from the franchisee, set as a percentage of the franchisee's monthly gross receipts from the franchised business, are not franchise fees under the Single Business Tax Act (1985 PA 27; MCL 208.9[7][c][ii], 445.1503[1]; MSA 7.558[9][7][c][ii], 19.854[3][1]).

*Miller, Canfield, Paddock, and Stone, P.L.C.* (by *Samuel J. McKim, III*, and *Joanne B. Faycurry*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Terry P. Gomoll* and *Jack Van Coevering*, Assistant Attorneys General, for the defendant.

Before: SAWYER, P.J., and HOOD and HOEKSTRA, JJ.

HOEKSTRA, J. Plaintiff appeals as of right from an order granting defendant summary disposition pursuant to MCR 2.116(C)(10). The lower court upheld defendant's single business tax assessments against plaintiff for deficiencies during the tax years 1985-89. We reverse.

Plaintiff is in the business of entering into franchise agreements that permit others to operate retail food operations under its name nationally and internationally. Plaintiff receives various payments from its franchisees pursuant to these agreements, two of which are relevant here. The first is a one-time payment that plaintiff usually receives at the time a franchise agreement is signed, although plaintiff notes that the payment could be paid in installments. Plaintiff applies these proceeds to site approval, lease approval, con-

struction approval, franchisee training, and assistance in opening the restaurant. The fee is nonrefundable even in the event that the franchise does not come to fruition.

The second at-issue payment plaintiff receives is a monthly payment equal to five percent of a franchise's gross receipts. Plaintiff labels this payment a "royalty" in the offering circular it provides to potential investors. A franchisee pays royalties "in consideration of the continuing right to use the proprietary marks, trade secrets, processes and know-how that accompany the Little Caesar franchise." During months that the amount of a franchise's gross receipts would result in a percentage less than a specified minimum amount, the franchisee is obligated by its agreement with plaintiff to make the specified minimum payment.

Plaintiff timely filed its 1985-89 tax returns, deducting the whole amount of royalties paid to it by franchisees from its tax base in accordance with plaintiff's interpretation of the Single Business Tax Act (SBTA), MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* Defendant, which is charged with administering and enforcing the SBTA, MCL 208.80; MSA 7.558(80), subsequently conducted an audit of plaintiff and billed plaintiff for tax deficiencies during those years. Although the parties agreed that the monthly payments were royalties, defendant asserted that plaintiff's nondeductible franchise fee income was comprised of not only a franchisee's first payment but also a franchisee's ongoing monthly payments.

The issue we must decide is whether the Legislature, in enacting MCL 208.9(7)(c)(ii); MSA 7.558(9) (7)(c)(ii), intended to preclude plaintiff from deduct-

ing its franchisees' monthly royalty payments from its Michigan single business tax base. Statutory interpretation is a question of law subject to review de novo. *Michigan Automotive Research Corp v Dep't of Treasury (After Remand)*, 222 Mich App 227, 231; 564 NW2d 503 (1997). Moreover, review de novo is appropriate because the lower court decided this issue upon defendant's motion for summary disposition. *Westfield Cos v Grand Valley Health Plan*, 224 Mich App 385, 387; 568 NW2d 854 (1997).

The first step in determining a taxpayer's single business tax liability is to determine its tax base. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 409; 488 NW2d 182 (1992). The tax base is the taxpayer's business income before apportionment, subject to certain upward or downward adjustments. *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 476; 373 NW2d 730 (1985). See MCL 208.9; MSA 7.558(9), MCL 208.41; MSA 7.558(41), MCL 208.45; MSA 7.558(45). One adjustment to the tax base is the deduction of royalties that a taxpayer receives, which is the adjustment at issue here. MCL 208.9(7)(c); MSA 7.558(9)(7)(c). A taxpayer has been permitted to deduct "all royalties" from its single business tax base since the enactment of the SBTA in 1975, but the SBTA does not supply a definition of the term "royalty." In an SBTA case addressing oil and gas royalties, our Supreme Court observed that the common understanding of the term "royalty" is as a "payment received by the transferor in patent, copyright, mineral, and oil *and* gas transactions." *Mobil Oil, supra* at 485 (emphasis in original).

In 1985, the Legislature amended the royalty deduction provision to except franchise fees. 1985 PA 27,

MCL 208.9(7)(c)(ii); MSA 7.558(9)(7)(c)(ii). Over a five-year period ending in 1991, the amount a taxpayer could deduct for franchise fees was reduced to zero. MCL 208.9(7)(c)(ii)(A)-(C); MSA 7.558(9)(7)(c)(ii)(A)-(C). The Legislature did not define "franchise fee" within the SBTA, but instead incorporated the definition of "franchise fee" found in the Franchise Investment Law (FIL), MCL 445.1501 *et seq.;* MSA 19.854(1) *et seq.* This definition is as follows:

> "Franchise fee" means a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payments for goods and services. The following are not the payment of a franchise fee:
>
> (a) The purchase or agreement to purchase goods, equipment, or fixtures directly or on consignment at a bona fide wholesale price.
>
> (b) The payment of a reasonable service charge to the issuer of a credit card by an establishment accepting or honoring the credit card.
>
> (c) Amounts paid to a trading stamp company by a person issuing trading stamps in connection with the retail sale of merchandise or service.
>
> (d) Payments made in connection with the lease or agreement to lease of a franchised business operated by a franchisee on the premises of a franchisor as long as the franchised business is incidental to the business conducted by the franchisor at such premises. [MCL 445.1503(1); MSA 19.854(3)(1).]

The parties dispute whether the Legislature intended for royalties arising from a franchise agreement to be encompassed within the 1985 franchise fee exception. To the words "is required to pay or agrees to pay" in the definition, defendant ascribes a legislative intent to include both the initial payment

to start a franchise and the ongoing royalty payments within the franchise fee exception because a prospective franchisee must agree to make both types of payments before the franchisee gains "the right to enter into a business under a franchise agreement." In contrast, plaintiff argues that the phrase "right to enter into a business under a franchise agreement" limits the franchise fee definition to the initial franchise fee paid by franchisees, regardless of whether a franchisee "is required to pay" that fee in one lump sum or "agrees to pay" in installments during the course of the franchise. Both interpretations are logically derived from these provisions; therefore, we find that the meaning of the franchise fee exception in MCL 208.9(7)(c)(ii); MSA 7.558(9)(7)(c)(ii) is ambiguous. Where a statute is ambiguous or susceptible to two or more constructions, the statute must be interpreted. *Shelby Charter Twp v State Boundary Comm*, 425 Mich 50, 72; 387 NW2d 792 (1986).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Int'l Business Machines v Dep't of Treasury*, 220 Mich App 83, 86; 558 NW2d 456 (1996). Defendant correctly notes that the Legislature stated that the FIL should be "broadly construed to effectuate its purpose of providing protection to the public." MCL 445.1501; MSA 19.854(1). However, the rule of liberal construction does not override other rules if the application would defeat the evident meaning of the act. *People v Whiteside*, 437 Mich 188, 197; 468 NW2d 504 (1991). Moreover, where there is doubt over their interpretation, tax statutes are construed more strongly against the government. *Comerica*

*Bank-Detroit v Dep't of Treasury,* 194 Mich App 77, 92; 486 NW2d 338 (1992).

We agree with plaintiff that several sections of the FIL would be rendered unworkable if we interpreted the definition of franchise fee as defendant does. It is reasonable to conclude that words used in one place in a statute have the same meaning in every other place in the statute. *Peiffer v General Motors Corp,* 177 Mich App 674, 677; 443 NW2d 178 (1989). One place where the FIL employs the phrase "franchise fee" is the small-franchise exemption. MCL 445.1506(1); MSA 19.854(6)(1). This section provides that a franchisor is exempt from certain filing and disclosure requirements if the "prospective franchisee is required to pay, directly or indirectly, a franchisee fee which does not exceed $500." MCL 445.1506(1)(c); MSA 19.854(6)(1)(c).

Defendant argues that the phrase "directly or indirectly" within the exemption is consistent with its position that the Legislature meant to include royalties within the franchise fee exception. However, applying defendant's interpretation to this provision would render the exemption meaningless. If royalties are encompassed within the definition of "franchise fee," then a franchisor would be unable to determine whether the exemption applied because a franchisor cannot predict a prospective franchisee's royalties and thereby determine, with any certainty, whether the franchise fee exceeds $500. At the time a franchisor files notice of a franchise sale and discloses the required information, the franchisor knows neither the prospective franchisee's gross receipts nor the duration of the franchise. In construing a statute, a court should presume that every word has some

meaning and should avoid any construction that would render a statute, or any part of it, without meaning or effect. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). In contrast to the application of defendant's interpretation, the exemption is workable if we apply plaintiff's interpretation. If the phrase "franchise fee" means only a franchisee's first payment, then a franchisor could determine whether the small-franchise exemption applied because the amount of that fee is previously established by the contracting parties and is paid in full only once.

Two additional places where the phrase "franchise fee" is used in the FIL are contained within the list of various items that a franchisor is required to disclose to a prospective franchisee in the franchisor's offering circular. MCL 445.1508(2); MSA 19.854(8)(2). The two items pertinent to this case are the following:

> (i) A statement of the franchise fee charged, the proposed application of the proceeds of such fee by the franchisor, and the formula by which the amount of the fee is determined if the fee is not the same in all cases.
>
> (j) A statement describing payments or fees other than franchise fees that the franchisee or subfranchisor is required to pay to the franchisor, including royalties and payments or fees which the franchisor collects in whole or in part on behalf of a third party or parties. [MCL 445.1508(2); MSA 19.854(8)(2).]

Regarding subsection i, plaintiff argues that for the same reasons that a franchisor would be unable to predict a franchise's profits and determine whether the small-franchise exemption was applicable if defendant's interpretation was correct, a franchisor would also be unable to comply with these offering-

circular requirements. Defendant argues that because a franchisor is merely required to propose its use of the proceeds, a franchisor can satisfy this requirement by estimating how it would use the royalty income. Indeed, for support of its argument, defendant points to two places in the FIL where a franchisor must predict a franchisee's profits. See MCL 445.1506(1)(h)(iii); MSA 19.854(6)(1)(h)(iii) (requiring "reasonable grounds to believe" a franchisee's gross sales will be a specified percentage), MCL 445.1508(2)(p); MSA 19.854(8)(2)(p) ("estimated or projected franchisee earnings"). However, we agree with plaintiff that the Legislature likely contemplated a more meaningful disclosure scheme, one which requires a franchisor to disclose to a prospective franchisee how the franchisee's nonrefundable initial fee would be used for specific services in starting the franchise but which would not require a franchisor to be accountable to its franchisees for how profits will be used.

Last, plaintiff argues that the existence of these two requirements, one for the disclosure of the franchise fee in subsection i and the other for the disclosure of any other fees in subsection j, belies defendant's position in this case because one of the two requirements would be repetitive if the Legislature included royalties within the definition of a franchise fee.[1] In con-

---

[1] We note that by employing two separate sections with language parallel to plaintiff's interpretation of Michigan's counterpart provisions, the Federal Trade Commission also distinguished between an initial franchise fee and ongoing royalties when it established disclosure requirements for franchisors' offering circulars. See FTC Trade Regulations Rules, 16 CFR 436.1(a)(7)-(8) (1997). These federal provisions are relevant because the Legislature stated in MCL 445.1508(2); MSA 19.854(8)(2) that a franchisor satisfies Michi-

trast, defendant argues that subsection j merely ensures that a franchisor discloses to the franchisee any payments that the franchisee will be required to make not only to the franchisor but also to a sub-franchisor. Defendant's argument is unpersuasive because subsection i would encompass franchise fee payments to a subfranchisor. More important, defendant's argument does not address why subsection j specifically includes royalties. Therefore, we again agree with plaintiff because this Court must give effect to every phrase, clause, and word in a statute, *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994), and read provisions in the context of the entire statute so as to produce an harmonious whole, *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995).

Defendant's reliance upon a 1976 administrative rule, which included royalties within the definition of a franchise fee before the Legislature incorporated the FIL's definition of a franchise fee in 1985, does not persuade us that an interpretation contrary to our statutory construction is either necessary or wise.[2] While an agency's construction generally deserves deference, an interpretation of a statute by the agency that administered it does not control where the inter-

---

gan's filing requirement when it files a disclosure statement in the form required by either the state or the federal agency.

[2] In any event, we are not convinced that the 1976 administrative rule is yet controlling because the rule was promulgated by the Department of Commerce before the Legislature partially repealed the FIL in 1984 and transferred administrative and rule-making responsibilities from the Department of Commerce to the Department of the Attorney General. See § 31 of the Administrative Procedures Act, MCL 24.231; MSA 3.560(131), and *Berkowitz v Dep't of Licensing & Regulation*, 127 Mich App 556; 339 NW2d 484 (1983) (applying § 31).

pretation is clearly wrong. *Murphy v Michigan*, 418 Mich 341, 348; 343 NW2d 177 (1984). Plaintiff's narrower interpretation of the definition of "franchise fee" results from a construction of the SBTA and the FIL that avoids conflict between these acts and therefore should control. *House Speaker v State Administrative Bd*, 441 Mich 547, 568-569; 495 NW2d 539 (1993).

Therefore, we construe the franchise fee exception of the SBTA, MCL 208.9(7)(c)(ii); MSA 7.558(9)(7)(c)(ii), more strongly against the government and hold that the legislative intent in incorporating the FIL's definition of "franchise fee" was to except only the initial payment that a franchisee pays for the right to enter into a business under a franchise agreement. Accordingly, we find that the franchise fee exception does not preclude plaintiff from continuing to deduct from its single business tax base the monthly percentage payments it receives from its franchisees.

Reversed.