ZINE v CHRYSLER CORPORATION
TERRY v CHRYSLER CORPORATION

Docket Nos. 199594, 209281. Submitted April 8, 1999, at Detroit. Decided
June 18, 1999, at 9:05 A.M.

Christopher Zine brought an action in the Wayne Circuit Court against
Chrysler Corporation, alleging that Chrysler violated the Michigan
Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; MSA
19.418(1) *et seq.*, when, after he purchased a truck manufactured
by Chrysler, Chrysler provided him with documents that caused
him to believe that the state of Michigan does not have a lemon
law that allows for a refund or a replacement for a defective vehi-
cle and to believe that his remedy for a defective vehicle lay solely
with the Chrysler Arbitration Board. Chrysler moved for summary
disposition, arguing that the MCPA applies to the sale of goods pri-
marily used for personal, family, or household purposes and does
not apply in Zine's case because he bought the vehicle at issue pri-
marily for use in his business. Zine filed a motion for class action
certification. The court, Kathleen I. MacDonald, J., denied both
motions. Chrysler appealed by delayed leave granted, and Zine
cross appealed.

T. Leonard Terry and Lois Terry brought an action in the Wayne Cir-
cuit Court against Chrysler Corporation, alleging, among other
claims, a similar claim under the MCPA. The court, Kathleen I.
MacDonald, J., granted the Terrys' motion to consolidate their
action with Zine's action and subsequently denied the Terrys'
motion for class action certification. The Terrys appealed by leave
granted the denial of the motion for class action certification. The
appeals were consolidated.

The Court of Appeals *held*:

1. Chrysler should have been granted summary disposition of
Zine's action on the ground that the MCPA is inapplicable. Reasona-
ble minds could not differ in concluding that Zine purchased his
vehicle primarily for business rather than personal use.

2. The trial court did not err in denying the motions for class
action certification. Zine does not have a cause of action under the
MCPA and therefore cannot serve as a representative of the pro-
posed class. The Terrys failed to adequately define the class so

potential members could be identified and counted in support of the claim that the class is so numerous that joinder of all claims was impracticable, and they failed to establish that there were questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

Affirmed in part, reversed in part, and remanded.

1. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — GOODS, PROPERTY, OR SERVICE — PERSONAL, FAMILY, OR HOUSEHOLD USE.

The Michigan Consumer Protection Act prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce involving goods, property, or service used primarily for personal, family, or household purposes; the act does not apply where the goods, property, or service is used primarily for a business purpose (MCL 445.902[d], 445.903[1]; MSA 19.418[2][d], 19.418[3][1]).

2. ACTIONS — CLASS ACTIONS — REPRESENTATIVE PLAINTIFFS.

A plaintiff who cannot maintain a cause of action as an individual is not qualified to represent a proposed class of plaintiffs with regard to that cause of action.

3. ACTIONS — CLASS ACTIONS — NUMEROSITY OF PLAINTIFFS.

The members of a proposed class must be so numerous that joinder of all members is impracticable; a plaintiff seeking to represent a class must adequately define the class so potential members can be identified and must present some evidence of the number of class members or otherwise establish by reasonable estimate the number of class members (MCR 3.501[A][1][a]).

4. ACTIONS — CLASS ACTIONS — COMMON QUESTIONS OF LAW OR FACT.

A plaintiff who seeks to represent a class must establish that there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members; the concern is whether there is a common issue whose resolution will advance the litigation (MCR 3.501[A][1][b]).

*Dani K. Libland* and *Judith A. Curtis*, for the plaintiffs.

*Bodman, Longley & Dahling LLP* (by *Thomas J. Tallerico* and *Paul R. Bernard*), for the defendant.

Before: HOOD, P.J., and HOLBROOK, JR., and WHITBECK, JJ.

WHITBECK, J. In Docket No. 199594, defendant Chrysler Corporation appeals by delayed leave granted, challenging a trial court order that denied its motion for summary disposition of plaintiff Christopher Zine's claim alleging a violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.* Zine cross appeals, challenging the trial court's denial of his motion for class certification. In Docket No. 209281, plaintiffs T. Leonard Terry and Lois Terry appeal by leave granted a trial court order denying their motion for class certification. We reverse in part, affirm in part, and remand.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Zine bought a new Dodge truck in May 1994. The Terrys bought a new Plymouth minivan in July 1995. Purchasers of an automobile in some states are entitled to receive information about their rights under their state's "lemon law." However, other states do not require the manufacturer to provide such information. Chrysler provides one booklet in each vehicle that contains information relevant to the lemon laws of those states that require the manufacturer to provide such information. It does not contain similar information relevant to the lemon laws of other states, such as Michigan, that do not require the manufacturer to provide such information.[1]

---

[1] Therefore, plaintiffs' booklets provided information about the lemon laws in California, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Vermont, the District of Columbia, and Puerto Rico. It also contained a notice to consumers in Colorado, Connecticut, Georgia, Indiana, Maryland, Missouri, Montana, New Mexico, North Carolina, South Carolina, Virginia, and West Virginia, that, in order to obtain a refund or replacement/repurchase of the vehicle under those states' laws, the con-

The booklet also contained a notice to all consumers, regardless of location. It provided in pertinent part:

> To ensure customer satisfaction, Chrysler Corporation and its dealers offer a Customer Arbitration Board which supplements the other Chrysler Corporation customer relations handling procedures. This Board is independent of both Chrysler Corporation and its dealers. The Board resolves complaints through arbitration. (ARBITRATION IS THE PROCESS BY WHICH TWO OR MORE PARTIES AUTHORIZE A THIRD PARTY OR PANEL TO RESOLVE THEIR DISPUTE.)
>
> We encourage you to discuss your problem with your dealer and the Chrysler Corporation Service and Parts Zone Office before filing a complaint with the Customer Arbitration Board. You do, however, have the right to take your problem directly to the Customer Arbitration Board, which will make a determination about your problem in a fair and equitable manner. . . .
>
> Chrysler's dispute settlement procedure does not take the place of any state or Federal legal remedies available to you. Whether or not you decide to submit your dispute to the Board, you are free to pursue other legal remedies.

After detailing the steps that should be followed to resolve a vehicle problem,[2] the notice goes on to state:

> If you're unable to resolve your problem through these two steps, you may choose to contact the Chrysler Customer Arbitration Board (CAB) in your area. . . . This service is strictly voluntary, and you need not submit your problem to the CAB before taking other actions.

---

sumer must first give Chrysler written notice of the problem with the vehicle. The booklet did not provide information about the lemon laws of any other states.

[2] Those steps being talking to the dealership and contacting the Chrysler Customer Center.

*NOTE*: In some states, laws have been enacted that per- · mit you to obtain a replacement vehicle or a refund of the vehicle purchase price under certain circumstances. The provisions of these laws vary from state to state. *If allowed by state law in your state, Chrysler requires that you first provide us with a written notification of any service difficulty you may have experienced so that we may have an opportunity to make any needed repairs before you are eligible for remedies provided by these laws.* In all other states, we request that you give us a written notice of any service difficulty. . . . [Emphasis in the original.]

In February 1996, Zine filed a proposed class action, claiming that the various information documents—and in particular the lemon law booklet—that Chrysler supplied to its dealers for distribution to purchasers of new cars was misleading in that it "caused the probability that Plaintiffs would believe that the state of Michigan does not have a 'lemon law' and that the Chrysler Arbitration Board was or is their only remedy for defective Chrysler vehicles." As a result, according to the complaint, Chrysler "systematically refused to provide a repurchase or replacement . . . for defective vehicles," "Plaintiffs were led to forego seeking remedies pursuant to Michigan's Lemon Law," and "Plaintiffs were led to believe notice of the defect to the manufacturer was not a prerequisite to seeking redress." Zine alleged that such conduct constituted a violation of the MCPA.

In May 1996, the Terrys filed suit against Chrysler, claiming that their new car was defective and sought damages for breach of warranty (count I), breach of good faith (count III), violation of the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq.* (count IV), and violation of the MCPA (count VII). They also sought to revoke their acceptance of the vehicle and to compel

Chrysler to take it back and refund the purchase price (count II). Count VII included the same allegations pleaded by Zine relative to the lemon law.[3] The *Terry* case was assigned to the same trial court to which the *Zine* case was assigned, and the Terrys subsequently moved to consolidate their case with the *Zine* case. The trial court granted that motion in early October 1996.

In the meantime, in late June 1996, Chrysler filed a motion for summary disposition pursuant to MCR 2.116(C)(10) in the *Zine* case, asserting that the MCPA was inapplicable because Zine purchased his truck primarily for use in his business, that it was not required to provide information regarding the lemon law to Michigan car buyers and Zine received and ignored the lemon law information provided by the Secretary of State's office, that the information provided was not misleading, that any misleading information it did provide was not material to the sale of the vehicle because it related solely to the remedies available after sale, and that a claim under the MCPA must be predicated on affirmative representations rather than omissions. Zine responded that he purchased the truck primarily for personal use but sometimes used it for work, that Chrysler voluntarily undertook an obligation to provide information and therefore had to provide accurate information, that the information was misleading because it did not disclose information about Michigan's lemon law, that the documents were material because they were supplied at the time he took possession of the vehicle, and that a claim under the MCPA can be predicated on

---

[3] The complaint did not include a count V or count VI.

omissions of fact as well as misrepresentations of fact.

In late June 1996, Zine filed a motion for class certification.[4] Zine asserted that the class included over 522,600 persons, making joinder impracticable, that the case involved Chrysler's common scheme of omissions and representations by way of the documents distributed to all purchasers and thus the claims and defenses would be the same, that he was a qualified representative for the class, and that it was best to maintain the action as a class action because each purchaser received the same information and was misled about the purchaser's rights under Michigan law. Chrysler responded that Zine could not represent the class because he could not maintain an action on his own behalf for the reasons specified in Chrysler's motion for summary disposition and he was not a suitable representative for the class in light of his animosity toward the company and his limited finances, that individual issues dominated over common ones in that different documents were provided for different model years and would require separate minitrials for each class member's claim and damages, which would make a class action unmanageable.

The trial court heard both motions in August 1996. The trial court rejected Chrysler's claim that the MCPA did not apply because the evidence showed that, while Zine used his truck primarily for business, it was his only vehicle and was used for personal reasons as well. The trial court also rejected Chrysler's argument that any representations were not material

---

[4] The ninety-one-day period for filing of the motion was extended by stipulation of the parties. MCR 3.501(B)(1).

to the sale because they related to remedies after the sale, they did not induce Zine to buy the truck, and Zine would have bought the truck with or without them. Finally, the trial court rejected Chrysler's argument that Zine could not have reasonably relied on any omissions because he received and ignored the lemon law information provided by the Secretary of State's office. It stated:

> This has been your strongest argument, I have to admit that. However, I have to keep focusing on the fact that once Chrysler accepts the responsibility for disseminating this material, I think under the Michigan Consumer Protection Act there is a cause of action if you do it in a misleading or deceptive manner and that's the allegation of the Plaintiff here. I have to take that in a light most favorable to them. If there are any issues of material fact, which I think there are when we talk about "reasonable people" as a matter of law, I can't say that as a matter of law . . . that the Plaintiff's actions here were unreasonable.

The trial court also denied Zine's motion for class certification, stating:

> I agree with the Defendant here. I don't find that, one, that this person is representative of all the members of this potential class. I don't find that it's so numerous that it requires that all of them be joined together, or that the awards would be similar. I think I would end up with a lot of little mini-trials here and I'm not going to do that.

The trial court entered an order disposing of both motions in early October 1996. Both parties promptly moved for reconsideration. The trial court denied Chrysler's motion and entered the appropriate order

in early November 1996.[5] Apparently one or both of the parties made known to the trial court at that time their intent to seek leave to appeal. Pursuant to stipulation, the trial court stayed all proceedings related to count VII of the Terrys' complaint pending this Court's ruling.

In October 1997, the Terrys filed a motion for class certification even though their complaint had not been filed as a proposed class action and no amended complaint had been filed. The motion and brief were almost word-for-word identical to those filed by Zine the previous year. Chrysler responded that the Terrys' motion was improper because they had not filed a proposed class action complaint, the motion should be denied for the same reasons Zine's motion was denied, and that Mr. Terry was not a suitable representative for the class because he was not misled or deceived by Chrysler and did not incur any damages. The trial court agreed to treat the Terrys' motion as a renewed motion for class certification in *Zine* with a new proposed representative and, following a hearing in early November 1997, it denied the motion for the same reasons it had denied Zine's motion. The trial court entered an order to that effect in January 1998.

## II. STANDARD OF REVIEW

### A. SUMMARY DISPOSITION

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich

---

[5] According to the trial court's docket sheet, Zine's motion was denied in mid-February 1997, but there is no order in the file to that effect.

App 521, 525; 540 NW2d 748 (1995). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. In ruling on such a motion, a trial court must consider not only the pleadings, but also depositions, affidavits, admissions, and other documentary evidence, MCR 2.116(G)(5), and must give the benefit of any reasonable doubt to the nonmoving party and must be liberal in finding a genuine issue of material fact. Summary disposition is appropriate only if the trial court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency that cannot be overcome. *Morganroth v Whitall,* 161 Mich App 785, 788; 411 NW2d 859 (1987). This Court also reviews statutory interpretation de novo. *Little Caesar Enterprises, Inc v Dep't of Treasury,* 226 Mich App 624, 627; 575 NW2d 562 (1997).

### B. CLASS CERTIFICATION

This Court reviews a trial court's ruling on class certification under the clearly erroneous standard. *Mooahesh v Dep't of Treasury,* 195 Mich App 551, 556; 492 NW2d 246 (1992). Generally speaking, factual findings are clearly erroneous if there is no evidence to support them or there is evidence to support them but this Court is left with a definite and firm conviction that a mistake has been made. *Featherston v Steinhoff,* 226 Mich App 584, 588; 575 NW2d 6 (1997); *Lumley v Univ of Michigan Bd of Regents,* 215 Mich App 125, 135; 544 NW2d 692 (1996).

### III. BUSINESS VERSUS PERSONAL USE UNDER THE MCPA

#### A. INTRODUCTION

The MCPA prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the

conduct of trade or commerce. MCL 445.903(1); MSA 19.418(3)(1). It defines the term "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." MCL 445.902(d); MSA 19.418(2)(d). The intent of the act is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Noggles v Battle Creek Wrecking, Inc*, 153 Mich App 363, 367; 395 NW2d 322 (1986).

### B. *CATALLO*

Because "personal" means "of or relating to a particular person" and the MCPA defines "person" as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity," MCL 445.902(c); MSA 19.418(2)(c), this Court has ruled that office furnishings sold to a business for its own use in its own office "were primarily for personal use." *Catallo Associates, Inc v MacDonald & Goren, PC*, 186 Mich App 571, 573; 465 NW2d 28 (1990).

However, this holding was criticized in *Robertson v State Farm Fire & Casualty Co*, 890 F Supp 671 (ED Mich, 1995), in which the court stated:

> "Person" is used in the MCPA in reference to those bringing actions (i.e., plaintiffs) and to those against whom actions will be brought (i.e., defendants). Since defendant sellers will often be businesses and corporations, the Act would have to include such entities in its definition of "per-

son" as long as the Act continued to refer to potential defendants as "persons." Accordingly, inclusion of corporations and other business entities in the definition of "person" serves a broader purpose and does not really aid the definition of "personal."

Furthermore, § 3a of the Act, which addresses appliance service contracts, defines "company" as "a person engaged in trade or commerce who provides a service contract *to consumers.*" [MCL 445.903a(1); MSA 19.418(3a)(1)]. It would be illogical to find that the legislature's intent was to limit the potential plaintiffs alleging unfair service contract practices to consumers (as expressly provided) while at the same time allowing anyone—consumer or not—to bring suit for unfair practices which did not involve appliance service contracts. . . .

Furthermore, *Catallo's* definition of "personal" ignores the terms surrounding it: family and household. . . . Here, under [the principle of statutory construction,] *noscitur a sociis*, the term "personal" should be read in light of its neighbors, "family" and "household." To view the term in isolation, as the court in *Catallo* did, is to give the very unintended breadth this principle of statutory construction seeks to avoid. [*Robertson, supra* at 679-680 (emphasis supplied in *Robertson*).]

The *Robertson* court therefore ruled that the proper focus was on the use to which the goods or services were put by the plaintiffs and because the plaintiffs sought insurance primarily for their business rather than their household, the MCPA did not apply. *Id.* at 680.[6]

---

[6] Language similar to that in the MCPA appears in UCC 9-109(1), MCL 440.9109; MSA 19.9109(1), which defines the term "consumer goods" as those "used or bought for use primarily for personal, family or household purposes." In *Business Modeling Techniques, Inc v General Motors Corp,* 123 Misc 2d 605, 607-608; 474 NYS2d 258 (1984), the court concluded that "[t]he use of the word 'primarily' in the Uniform Commercial Code requires a determination of the main or chief use of a product and centers

We conclude that the *Catallo* holding shifts the focus from the primary use to which the consumer puts the product to whether the purchaser intends to use the product himself, regardless of the purpose for which it was purchased, and brings within the scope of the MCPA any product purchased by a statutorily defined "person" for the person's own use regardless of the nature of that use. Therefore, we hold that *Catallo* was wrongly decided and that, if an item is purchased primarily for business or commercial rather than personal purposes, the MCPA does not supply protection.[7]

### C. ZINE'S BUSINESS PURCHASE

We agree with the holding in *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 85-86; 592 NW2d 112 (1999), that *Catallo* was wrongly decided[8] and find that the trial court erred in denying

---

attention on the actual use by a particular individual." Accord *Richards v General Motors Corp*, 461 So 2d 825, 826 (Ala App, 1984).

[7] The *Catallo* case was decided in October 1990 and thus is not binding under MCR 7.215(H) even though it was approved for publication in December 1990. *People v Cooke*, 194 Mich App 534, 537; 487 NW2d 497 (1992). See also *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 86; 592 NW2d 112 (1999).

[8] See *Jackson Co Hog Producers*, *supra* at 85-86:

We recognize that our holding is contrary to *Catallo Associates, Inc v MacDonald & Goren, PC*, 186 Mich App 571; 465 NW2d 28 (1990), in which this Court ruled that because subsection 2(c) of the MCPA, MCL 445.902(c); MSA 19.418(2)(c) defines "person" as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity," the concept of "personal," as used in the definition of "trade or commerce," contemplates those transactions "of or relating to a particular person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity." By this Court's reasoning in *Catallo*, because defendant supplied electricity to plaintiffs, and because plaintiffs are "*persons*" under the MCPA, the electricity was

Chrysler's motion for summary disposition. Zine testified at his deposition that he is self-employed as a sales representative. He stated he bought the truck "for this business application" and "primarily for my business," he described the truck as a business asset, he had a cargo box installed for storing equipment samples, he had it modified with a hydraulic lift gate, apparently to aid in the loading and unloading of the samples, and he had the name of his company painted on the side of the truck. Zine added that it

primarily for "*personal*" use. We conclude that *Catallo* was wrongly decided and decline to follow its analysis. First, to use the MCPA's definition of the root word "person" to extrapolate a definition for the word "personal" is not appropriate. The two words are different, and the definition of one should not control the definition of the other. Second, the *Catallo* panel's definition of "personal" ignores the context in which the word is used, i.e., "personal, family, or household purposes." Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1), *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). In defining the term "trade or commerce" as it did, the Legislature intended to limit the MCPA's applicability to a class of transactions much narrower in scope than that recognized by the panel in *Catallo*. That is, in limiting the MCPA's applicability to "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes," the Legislature intended to protect consumers harmed from transactions more intimate in nature than the transaction involved in this case. In construing a statute, this Court should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). In our opinion, the decision of the panel in *Catallo* impermissibly renders the Legislature's limiting language obsolete. Further, at least one federal court, in *Robertson v State Farm Fire & Casualty Co*, 890 F Supp 671, 680 (ED Mich, 1995), has expressly rejected the decision of the panel in *Catallo* for the reasons stated herein.

Accordingly, we reject *Catallo* and rule that the services that defendant supplied to plaintiffs were not "primarily for personal, family, or household purposes," but rather were mainly for the operation of plaintiffs' business. [Emphasis in the original.]

was "also for my personal needs," e.g., going to the grocery store or post office or "haul[ing] my two sons around," but said over eighty percent of the miles he put on the truck were attributable to business driving and admitted that he claimed a business deduction for depreciation of the vehicle.

We conclude that reasonable minds could not differ in concluding that Zine purchased the truck primarily for business rather than personal use and therefore hold that Chrysler was entitled to summary disposition on this ground.

### IV. DUTY TO DISCLOSE

#### A. INTRODUCTION

The MCPA prohibits unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce and defines such prohibited methods, acts, or practices to include the following:

> Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction. [MCL 445.903(1)(n); MSA 19.418(3)(1)(n).]
> Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. [MCL 445.903(1)(cc); MSA 19.418(3)(1)(cc).]

The crux of Zine's claim is that Chrysler violated the above subsections of the MCPA by voluntarily undertaking to provide information about some states' lemon laws without disclosing the existence or terms of Michigan's lemon law. Some states require the manufacturer to provide information about their residents' rights under their lemon laws. Thus, Chrysler provided the booklet containing the requisite

information pertaining to those states' laws. Michigan does not require the manufacturer to provide this information with the vehicle. Instead, it requires the Secretary of State to provide the information with the vehicle's certificate of title. MCL 257.1408; MSA 9.2705(8).[9]

### B. EXISTENCE OF A DUTY; ASSUMPTION OF A DUTY

Motor vehicle manufacturers do not have a duty to provide lemon law information to Michigan consumers, and the MCPA does not impose any duty on them to do so. It provides only that, when such information is provided, it not be done in a misleading or confusing or otherwise deceptive manner. Clearly, had Chrysler not provided any information regarding lemon laws, it could not be charged with violating the MCPA. The trial court nevertheless found that defendant's failure to provide that information could violate the MCPA because it interpreted Chrysler's provision of the lemon law booklet as a voluntary assumption of the duty to provide lemon law information. We see at least two problems with this reasoning.

First, the trial court erroneously assumed that Chrysler had voluntarily assumed a duty it did not otherwise have. Chrysler did not undertake to provide any information about lemon laws to residents of

---

[9] The notice must provide substantially the following information:

> IMPORTANT: IF THIS VEHICLE IS DEFECTIVE YOU MAY BE ENTITLED UNDER STATE LAW TO REPLACEMENT OF IT OR A REFUND OF ITS PURCHASE PRICE. TO OBTAIN REPLACEMENT OR A REFUND YOU MUST FIRST REPORT THE DEFECT IN WRITING TO THE MANUFACTURER AND YOU MAY BE REQUIRED TO FIRST ARBITRATE THE DISPUTE.

The notice must also tell the consumer what to do to protect the consumer's rights under this law. MCL 257.1408; MSA 9.2705(8).

Michigan or any other states in which it was not required to provide such information. It provided all consumers, including Michigan residents, with information about the company's arbitration procedure for settling disputes. It then went on to provide information to certain consumers about their rights under their states' lemon laws. Chrysler did this not because it was assuming a duty to provide information to residents of Michigan (or any other state) but because it was fulfilling a duty imposed by the laws of other states. It fulfilled this duty by printing one booklet for all states that had imposed such a duty and placing that booklet inside each vehicle so that, regardless of which state the vehicle was shipped to, Chrysler would have complied with the obligations imposed on it by that state.

Second, the voluntary assumption of a duty is a concept applicable to negligence law. To prove negligence, the plaintiff must first prove that the plaintiff was owed a particular duty by the defendant. *Schanz v New Hampshire Ins Co*, 165 Mich App 395, 402; 418 NW2d 478 (1988). "Duty is an obligation that the defendant has to the plaintiff to avoid negligent conduct." *Terry v Detroit*, 226 Mich App 418, 424; 573 NW2d 348 (1997). When a person voluntarily assumes a duty not otherwise imposed by law, "that person is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task." *Rhodes v United Jewish Charities of Detroit*, 184 Mich App 740, 743; 459 NW2d 44 (1990).

Here, Zine did not claim that Chrysler was negligent, and therefore principles relating to the imposition of a duty for purposes of negligence liability have

little application. The case cited by Zine, *Baker v
Arbor Drugs, Inc,* 215 Mich App 198; 544 NW2d 727
(1996), is distinguishable on that basis.[10] Here, Zine's
claim that Chrysler failed to include information
applicable to Michigan residents in the lemon law
booklet is predicated on an alleged duty to provide
that information. Because Chrysler was not obligated
to provide lemon law information to Michigan con-
sumers and was not purporting to do so by providing
that information to consumers in other states as
required by law, the trial court erred in denying
Chrysler's motion for summary disposition on this
ground.

V. UNFAIR, UNCONSCIONABLE, OR DECEPTIVE METHODS, ACTS, OR
PRACTICES IN THE CONDUCT OF TRADE OR COMMERCE

A. INTRODUCTION

As noted, the MCPA prohibits unfair, unconsciona-
ble, or deceptive methods, acts, or practices in the
conduct of trade or commerce and defines such pro-
hibited methods, acts, or practices to include the
following:

> Causing a probability of confusion or of misunderstand-
> ing as to the legal rights, obligations, or remedies of a party
> to a transaction. [MCL 445.903(1)(n); MSA 19.418(3)(1)(n).]

---

[10] In *Baker, supra* at 204-206, this Court held that the plaintiff had
stated a claim of negligence based on the defendant's filling of two incom-
patible prescriptions because, although a pharmacy does not ordinarily
have a duty to monitor drug usage, the defendant assumed that duty by
using a computer system that detected potentially harmful drug interac-
tions and advertising that fact to customers. While Baker also alleged a
claim under the MCPA, it was not based on the duty to monitor drug inter-
actions per se. Rather, it was based on the defendant's false statement in
its advertising that its computer monitoring system would prevent the dis-
pensation of two incompatible drugs. *Id.* at 207.

Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. [MCL 445.903(1)(s); MSA 19.418(3)(1)(s).]

Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. [MCL 445.903(1)(cc); MSA 19.418(3)(1)(cc).]

### B. A "TRANSACTION"

Chrysler claims that the term "transaction" as used in subsections 3(1)(n) and (cc) must refer to the sale of the vehicle and therefore anything that happens after the sale is irrelevant. We observe that the cases cited by the parties are not particularly helpful in interpreting these subsections.[11] Further, the MCPA

---

[11] Chrysler, for example, relies on various cases that involved claims based on misrepresentations made or apparently made to induce the sale but did not actually define the term "transaction." See, e.g., *Dix v American Bankers Life Assurance Co of Florida*, 429 Mich 410, 412-413, n 3; 415 NW2d 206 (1987) (involving false representations about annuity policies purchased by the plaintiffs but not citing any specific subsection of subsection 3[1]); *Michaels v Amway Corp*, 206 Mich App 644, 651-652; 522 NW2d 703 (1994) (involving failure to reveal information, presumably at the time the plaintiffs contracted with the defendant, but not citing any specific subsection of subsection 3[1]); *Temborius v Slatkin*, 157 Mich App 587, 597-598; 403 NW2d 821 (1986) (involving violation of subsections 3(1)(q), (s), (bb), and (cc) based on representations that the plaintiff's car was ready for delivery upon payment of the purchase price and failure to inform the plaintiff that payment would not necessarily result in immediate delivery of the car); *Mayhall v A H Pond Co, Inc*, 129 Mich App 178, 180; 341 NW2d 268 (1983) (involving misrepresentations that induced the plaintiff to purchase a ring but not citing any specific subsection of subsection 3[1]). See also *Price v Long Realty, Inc*, 199 Mich App 461, 464, 471; 502 NW2d 337 (1993) (involving misrepresentations that induced the plaintiffs to purchase property but not citing any specific subsection of subsection 3[1]). Plaintiff relies on *Mikos v Chrysler Corp*, 158 Mich App 781; 404 NW2d 783 (1987), which held that breach of an implied warranty is actionable under subsection 3(1)(y), which relates in part to the "failure of the other party to the transaction to provide the promised benefits," MCL 445.903(1)(y); MSA 19.418(3)(1)(y), an occurrence that could only become known after the transaction has been concluded.

does not define the term "transaction." Black's Law Dictionary, however, defines it as:

> Act of transacting or conducting any business; negotiation; management; proceeding; that which is done; an affair. It may involve selling, leasing, borrowing, mortgaging or lending. Something which has taken place, whereby a cause of action has arisen. It must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered. [Black's Law Dictionary (5th ed).]

*Random House Webster's College Dictionary* (1997) provides these definitions:

> 1. the act or process of transacting; the fact of being transacted. 2. something that is transacted, esp. a business agreement.

Webster's defines "transact" as follows:

> 1. to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement. 2. to carry on or conduct business, negotiations, etc. [*Id.*]

Thus, a "transaction" is the business conducted between the parties, which in this case would be the negotiations that concluded in Zine's agreement to buy the truck. Because subsection 3(1)(cc) refers to the failure to reveal information material to the transaction, it can be reasonably understood only as referring to information withheld during the negotiations and up to the time the transaction, in this case a sale of a vehicle, is complete. Information that was not included in a disclosure made *after* the "transaction"—i.e., the sale of the vehicle—was completed

would not be material to that transaction. Therefore, we hold that Chrysler's disclosure of information about some states' lemon laws while failing to disclose information about Michigan's lemon law, which came to a buyer's attention only after the transaction had been completed, is not actionable under subsection 3(1)(cc).

Subsection 3(1)(n), however, refers to causing a party to the transaction to misunderstand the party's legal rights, not to representations affecting the transaction itself. Because representations made both before and after the transaction has been completed could cause a party to the transaction to misunderstand the party's legal rights, subsection 3(1)(n) can reasonably be understood to refer to acts that occur before *and after* the transaction has been concluded. Therefore, we conclude that Chrysler's argument in this regard fails with respect to subsection 3(1)(n).

### C. AFFIRMATIVE STATEMENTS OF FACT

Chrysler also claims that subsection 3(1)(n) must be read as involving an affirmative statement of fact that causes a party to misunderstand the party's legal rights. The one case cited by Chrysler, *Lesatz v Standard Green Meadows*, 164 Mich App 122; 416 NW2d 334 (1987), does not support this claim. While Lesatz did predicate a claim under subsection 3(1)(n) on an affirmative statement, the Court did not discuss whether an affirmative representation was the exclusive basis on which liability could be imposed under that subsection. *Id.* at 126, 128. Nor is Chrysler's interpretation supported by the language of the MCPA itself. Some subsections involve express representations, see, e.g., subsections 3(1)(b)-(l), (q), (r), (w), (y), (bb), (dd), (ee), others involve omissions, see,

e.g., subsections 3(1)(s), (cc), and yet others do not speak in terms of representations or omissions, see, e.g., subsections 3(1)(a), (m)-(o), (t)-(v), (x), (z), (aa), (ff). Given the variety of deceptive practices prohibited by the act, a single act may violate more than one subsection. See, e.g., *Temborius v Slatkin*, 157 Mich App 587, 598; 403 NW2d 821 (1986).

It does not, therefore, logically follow from the fact that some subsections involve omissions that others must involve affirmative representations. While Chrysler claims that such a reading is necessary to prevent subsections 3(1)(s) and (cc) from being rendered meaningless, we do not find this to be the case. Those subsections do involve omissions of fact but do not specifically address deceptive practices that cause a party to misunderstand his legal rights as does subsection 3(1)(n). Because both representations or omissions could cause a party to misunderstand the party's legal rights, subsection 3(1)(n) can reasonably be understood to encompass both. Therefore, we conclude that Chrysler's argument fails with respect to this aspect of subsection 3(1)(n).

### D. MATERIALITY

Chrysler claims that because subsections 3(1)(s) and (cc) both require that the omitted fact(s) must be "material," the materiality of those facts must be "tested at the time of the transaction, not post-sale." For the reasons stated above, Chrysler is undoubtedly correct about its reading of subsection 3(1)(cc). Subsection 3(1)(s) refers to omissions of material fact that mislead the consumer, but does not expressly state that those omissions must affect the transaction. In *Mayhall v A H Pond Co, Inc*, 129 Mich App 178, 182-183; 341 NW2d 268 (1983), this Court stated that

it is proper to construe the provisions of the MCPA "with reference to the common-law tort of fraud." One element of fraud is that the defendant made a material representation. *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). To be material, the representation need not "relate to the sole or major reason for the transaction, but . . . it [must] relate to a material or important fact." *Papin v Demski*, 17 Mich App 151, 155; 169 NW2d 351 (1969), aff'd 383 Mich 561; 177 NW2d 166 (1970). See also *Rzepka v Farm Estates, Inc*, 83 Mich App 702, 710; 269 NW2d 270 (1978) (holding that the defendant seller's omission of fact was tantamount to a representation and was material because it related to a fact crucial to the plaintiff's decision to buy).

By analogy, then, a material fact for purposes of the MCPA would likewise be one that is important to the transaction or affects the consumer's decision to enter into the transaction. This interpretation is supported by the dictionary definition, which defines "material" as a "[r]epresentation relating to a matter which is so substantial and important as to influence [the] party to whom [it is] made . . . ." Black's Law Dictionary, *supra*. Therefore, because the omission of which Zine complains came to light *after* the transaction was completed and Zine admitted during his deposition that his decision to buy the truck would not have been affected had he known about Michigan's lemon law, the omission was not a material fact and Zine's claim under subsection 3(1)(s) is not actionable.

### E. MISLEADING OR DECEPTIVE OMISSIONS

Chrysler claims that subsection 3(1)(s) must be read as involving an omission that would mislead or

deceive a reasonable consumer. This is a plain misreading of the statute. Subsection 3(1)(s) prohibits making an omission that tends to mislead or deceive any consumer, but only if the omitted fact could not reasonably be known by that consumer. Thus, the issue is not whether the omission is misleading to a reasonable consumer but whether the consumer could reasonably be expected to discover the omission at issue.

### F. THE WARRANTY AND THE LEMON LAW BOOKLET

The warranty materials checklist provides spaces for the dealer to mark which items have been distributed to the buyer. One of those items is the "Consumer Law or 'Lemon Law' pamphlet for State of _____ (Refer to Owner's Rights Under State Lemon Law book)." That item was not checked on Zine's checklist, although Chrysler's omnibus lemon law booklet was in the truck. That booklet is entitled "Owner's Rights Under State Lemon Laws" and is described as a "supplement to owner's & warranty manuals." The warranty manual described the limited warranties on the vehicle and added the following statement:

> *NOTE*: In some states, laws have been enacted that permit you to obtain a replacement vehicle or a refund of the vehicle purchase price under certain circumstances. The provisions of these laws vary from state to state. *If allowed by state law in your state, Chrysler requires that you first provide us with a written notification of any service difficulty you may have experienced so that we may have an opportunity to make any needed repairs before you are eligible for remedies provided by these laws.* In all other states, we request that you give us a written notice of any service difficulty. . . .[Emphasis in the original.]

This same note appears in the lemon law booklet. Because the note clearly states that written notice of problems is required by Chrysler if state law allows it to require written notice and that written notice is requested even if state law does not allow Chrysler to require written notice, we conclude that reasonable minds could not differ in concluding that the documents clearly made it known that written notice was to be given before seeking a replacement vehicle or refund of the purchase price.

The warranty manual indicates that some states have lemon laws, the provisions of which vary from state to state. The lemon law booklet says the same thing. It then goes on to provide certain information regarding certain states' lemon laws, but does not state that those laws are the only lemon laws in the country. Therefore, we find that the lemon law booklet was not misleading. Even if one could reasonably infer that the states omitted from the booklet did not have lemon laws, the fact that Michigan does have a lemon law should become known by any Michigan resident upon receipt of title to the vehicle. Because that normally occurs within weeks of purchase, it is the rare consumer who would not have knowledge of Michigan's lemon law by the time the consumer experienced so many problems with a vehicle as to have a claim under the law. Therefore, we observe that the allegedly misleading nature of the booklet would not, in most cases, be a proximate cause of any damages. See *Ridley v Detroit*, 231 Mich App 381, 389; 590 NW2d 69 (1998) ("determination whether wrongful conduct may be considered a proximate cause of an injury involves a determination whether the connection between the wrongful conduct and the

injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable"). Moreover, as noted above, because the omission was not a material fact, the misleading nature of the omission is irrelevant.

### G. CONCLUSION

We hold that Zine completed the "transaction" in this case when he purchased the truck and that subsections 3(1)(n) and 3(1)(cc) of the MCPA are inapplicable. We observe, however, that because both representations or omissions could cause a party to misunderstand the party's legal rights, subsection 3(1)(n) can reasonably be understood to encompass both. With respect to materiality, we hold that subsections 3(1)(n) and 3(1)(s) of the MCPA are inapplicable. We observe, however, that subsection 3(1)(s) of the MCPA does address the issue whether the consumer could reasonably be expected to discover the omission in question. Finally, we find that the lemon law booklet was not misleading with regard to Zine's claim.

### VI. CLASS CERTIFICATION

#### A. INTRODUCTION

A member of a class may maintain a suit as a representative of all members of the class only if the following requirements are met:

> (a) the class is so numerous that joinder of all members is impracticable;
>
> (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;
>
> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice. [MCR 3.501(A)(1).]

### B. ZINE AS A MEMBER OF THE CLASS

The threshold consideration for class action certification is that the proposed class representative must be a member of the class. A plaintiff who cannot maintain the cause of action as an individual is not qualified to represent the proposed class. *McGill v Automobile Ass'n of Michigan*, 207 Mich App 402, 408; 526 NW2d 12 (1994). We have concluded that Zine did not have a cause of action for violation of the MCPA and therefore hold that he could not serve as a representative of the class of persons who may have such a cause of action. Because Zine's motion for class certification was subject to denial on this basis alone, the trial court properly denied the motion for class certification on this ground. *McGill, supra.*

### C. THE CLASS ACTION FACTORS[12]

#### (1) NUMEROSITY

The first factor is numerosity. There is no particular minimum number of members necessary to meet the numerosity requirement, and the exact number of members need not be known as long as general

---

[12] Because Chrysler has not challenged on appeal Leonard Terry's right to maintain a cause of action under the MCPA or his qualifications to serve as class representative, it is unnecessary to determine whether the trial court properly denied his motion for class certification on this ground. Rather, the question is whether Leonard Terry can maintain the action as a class action. As the person seeking class certification, plaintiff bears the burden of proof. *In re American Medical Systems, Inc*, 75 F3d 1069, 1079 (CA 6, 1996). There being little Michigan case law construing MCR 3.501, it is appropriate to consider federal cases construing the similar federal court rule (FR Civ P 23) for guidance. *Brenner v Marathon Oil Co*, 222 Mich App 128, 133; 565 NW2d 1 (1997).

knowledge and common sense indicate that the class is large. *Thomas v Christopher*, 169 FRD 224, 236 (D DC, 1996); *In re Consumers Power Securities Litigation*, 105 FRD 583, 601 (ED Mich, 1985); *Perez-Funez v Dist Director, INS*, 611 F Supp 990, 995 (CD Cal, 1984). Because the court cannot determine if joinder of the class members would be impracticable' unless it knows the approximate number of members, *Sims v Parke Davis & Co*, 334 F Supp 774, 781 (ED Mich, 1971), aff'd 453 F2d 1259 (CA 6, 1971), cert den 405 US 978; 92 S Ct 1196; 31 L Ed 2d 254 (1972), the plaintiff must adequately define the class so potential members can be identified and must present some evidence of the number of class members or otherwise establish by reasonable estimate the number of class members. *Thomas, supra*; see also *Sandlin v Shapiro & Fishman*, 168 FRD 662, 666 (MD Fla, 1996), recon den 1997 WL 155418 (MD Fla, 1997); *Heartland Communications, Inc v Sprint Corp*, 161 FRD 111, 115 (D Kans, 1995); *Bremiller v Cleveland Psychiatric Institute*, 898 F Supp 572, 576 (ND Ohio, 1995); *Goodnight v Shalala*, 837 F Supp 1564, 1582 (D Utah, 1993).

Neither Zine nor the Terrys identified a specific number of class members, but indicated that the class potentially included all 522,658 purchasers of new Chrysler products from February 1, 1990, onward.[13] However, class members must have suffered actual injury to have standing to sue, *Sandlin, supra* at 666, so plaintiffs must show that there is a sizable number of new car buyers who had seriously defective vehi-

---

[13] Zine alleged in his second amended complaint that the class consisted of all purchasers of new Chrysler automobiles in the past six years and contained approximately 250,000 members

cles and lost their right to recovery under Michigan's lemon law because they were misled by the documents supplied by Chrysler. Neither Zine nor the Terrys indicated even approximately how many people might come within this group, nor did they indicate a basis for reasonably estimating the size of the group. Therefore, both Zine and the Terrys failed to show that the proposed class is so numerous that joinder of all members is impracticable. We hold that the trial court properly denied the motion for class certification on this ground.

### (2) COMMON QUESTIONS OF LAW OR FACT

The second factor is common questions of law or fact that predominate over individual questions.[14] The common question factor is concerned with whether there "is a common issue the resolution of which will advance the litigation." *Sprague v General Motors Corp*, 133 F3d 388, 397 (CA 6, 1998), cert den 524 US 923; 118 S Ct 2312; 141 L Ed 2d 170 (1998). It requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v West Palm Beach*, 875 F2d 1546, 1557-1558 (CA 11, 1989).

The common question here is whether the new car documents supplied by Chrysler violated the MCPA. Even if that question were to be resolved in plaintiffs'

---

[14] This factor ties in with the fifth factor in that if individual questions of fact predominate over common questions, the case will be unmanageable as a class action. MCR 3.501(A)(1)(e), (2)(c); *Lee v Grand Rapids Bd of Ed*, 184 Mich App 502, 504-505; 459 NW2d 1 (1989).

favor, the trial court would have to determine for each class member who had purchased a new vehicle whether the vehicle was bought primarily for personal, family, or household use, MCL 257.1401(a)(i); MSA 9.2705(1)(a)(i), whether the plaintiff had a defective vehicle and reported the defect to the manufacturer or dealer, MCL 257.1402; MSA 9.2705(2), had the vehicle in for a reasonable number of repairs, MCL 257.1403(1), (3); MSA 9.2705(3)(1), (3), was unaware of Michigan's lemon law, read the documents supplied by Chrysler, and was led to believe that Michigan did not have a lemon law, and chose not to pursue a remedy under the lemon law because of that belief. These factual inquiries, all of which were subject to only individualized proof, predominate over the one common question and would render the case unmanageable as a class action. Therefore, we hold that the trial court properly denied the motion for class certification on this ground as well.

### VII. CONCLUSION

We reverse the trial court's denial of Chrysler's motion for summary disposition and remand for further proceedings consistent with this opinion. We affirm the trial court's denial of class certification. We do not retain jurisdiction.