# STATE OF MICHIGAN

# COURT OF APPEALS

GARY COLLINS,

Plaintiff-Appellant,

v

A1 MOTORS, LLC,

Defendant-Appellee,

and

DAN TAYLOR,

Defendant.

UNPUBLISHED
March 28, 2017

Nos. 330004; 330839
Monroe Circuit Court
LC No. 14-036074-NZ

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 330004, plaintiff Gary Collins appeals the trial court's order granting summary disposition in favor of defendant A1 Motors, LLC (A1), under MCR 2.116(C)(10), and generally awarding sanctions to A1. In Docket No. 330839, plaintiff appeals the trial court's order providing that A1 was entitled to $17,657 in sanctions. This Court consolidated these appeals "to advance the efficient administration of the appellate process."[1] We affirm the summary dismissal of plaintiff's complaint but vacate the award of sanctions.

This case arises out of A1's sale of a 2001 BMW to plaintiff and his wife on April 16, 2012. A1 is a used car dealer, and defendant Dan Taylor was the A1 salesman involved in the BMW transaction at issue. An Odometer Disclosure Statement (ODS) executed by Taylor on behalf of A1 at the time of the sale indicated that, "to the best of [A1's] knowledge," the car's "actual mileage" was 105,091. We note that A1 was not statutorily required under Michigan law to provide a written disclosure of the odometer mileage, given that the BMW was "10 years old, or older." MCL 257.233a(5)(c). As alleged in plaintiff's complaint, there were "significant and recurring mechanical problems with the vehicle" following the sale. There was testimony that

---

[1] *Collins v A1 Motors, LLC*, unpublished order of the Court of Appeals, entered February 4, 2016 (Docket Nos. 330004 and 330839).

the BMW has sat idle for the last couple of years, needing costly repairs. Plaintiff alleged counts sounding in (1) intentional misrepresentation, (2) negligent or innocent misrepresentation, and (3) violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.* The primary focus of plaintiff's complaint as to the three causes of action was on the ODS. Indeed, the common-law misrepresentation counts solely concerned the ODS.

As reflected in service records submitted below, a previous individual owner of the BMW had it serviced in January 2011 at BMW of Annapolis in the state of Maryland and the mileage was listed at 235,126. That same owner had it serviced again at BMW of Annapolis in April 2011, at which time the service records indicated that the BMW had been driven 240,362 miles according to the odometer. Documents subpoenaed from Manheim, a company that operates vehicle auctions, showed that on September 29, 2011, the BMW was sold at auction by Lifestyle Auto Broker to Five Stars Auto Collision for $5,295 and that the BMW's odometer now read that the vehicle had 105,061 miles on it. Lifestyle Auto Broker certified that this was the BMW's actual mileage to the best of its knowledge. The title also showed the BMW with 105,061 miles at the time of transfer. The Manheim documents further noted that the BMW's check-engine light was on. Additional documentation revealed that on December 13, 2011, Five Stars Auto Collision sold the BMW, through auctioneer ABC Atlanta, to Persichetti Motorsports, Inc, for $5,450, with the odometer reading 105,091 miles. The ABC Atlanta auction document memorializing the transfer stated the mileage amount in an ODS section, which contained three boxes that could potentially be checked. The first box was a certification that the odometer reading reflected "the amount of mileage in excess of [the vehicle's] mechanical limits," the second box was a certification that the odometer reading was not the actual mileage, and the third box was to be checked if there was an exemption from reporting requirements. If the seller was simply certifying that the odometer reading was accurate to the best of the seller's knowledge, there was no box to check, just a space for a signature applicable to the entire ODS section. Five Stars Auto Collision did not check any of the boxes, but it also did not sign the ODS section, at least in the document submitted below.[2] The title itself stated that the transfer was exempt from having to disclose the odometer mileage. A post-sale inspection checklist on ABC Atlanta's letterhead indicated that the check-engine light remained on, that the BMW's engine was misfiring, that the mass flow sensor was showing low input, and that there was a problem with the throttle pedal sensor.

A little over a month later, on January 17, 2012, Persichetti Motorsports, Inc., sold the BMW to A1 for $7,100 at auction via ABC Atlanta, and the odometer remained at 105,091 miles according to auction documents, although the title declared that the transfer was exempt from mileage disclosure requirements. As with the previous transfer by Five Stars Auto Collision, Persichetti Motorsports, Inc., did not check any of the three boxes in the auction document's ODS section, nor was it signed. With respect to the ODS section, plaintiff makes the same argument as referenced in footnote 2 of this opinion. One of A1's two members or owners, Stanley Kaufman, testified in his deposition that the BMW was purchased "as is" by A1

---

[2] Plaintiff repeatedly argues that A1 did not reveal to plaintiff and his wife that the box certifying that the odometer reading was accurate had not been checked. There was no such box. Perhaps plaintiff is alluding to the lack of a signature.

from Persichetti Motorsports, Inc., at the auction online, not in person, and that there was no post-sale inspection done on the car.[3] He further stated that the BMW was specifically purchased for the sister of A1's other owner, Jason Katz; however, because there were mechanical problems with the car, it was not presented to her. Kaufman additionally testified that A1 had several repairs made on the BMW and that there were "issues with the engine." Some of the repairs entailed purchasing an ignition coil sensor housing, a fuel injector, spark plugs, and a valve repair kit. Kaufman indicated that there were problems with the BMW's timing. He acknowledged the following language in a service work order pertaining to repairs made on the BMW before its sale to plaintiff and his wife:[4]

> "Engine is out of time. Removed broken valve cover. Found engine 15 degrees out of camshaft timing and 10 degrees out of VANOS gear timing. Removed per BMW repair manuals and with BMW special tools. While removing valve cover found cover broken, also found bottom valve cover bolt missing. Attempted to fix using OEM bolt, but the bore had been stripped. Used epoxy to reattach the broken bolt. Vehicle's now running."

When asked "[h]ow often do you have to work on the timing of a hundred thousand mile vehicle[]?", Kaufman responded, "Not often."

On April 16, 2012, three months after A1 had purchased the BMW at auction, plaintiff and his wife bought the car. The sales price was $13,802, without considering such items as fees, taxes, an extended service contract, $500 due on delivery, a trade-in, and the interest to ultimately be paid on the amount financed, which, if considered, would make the final tally over $25,000. After mechanical problems developed, plaintiff obtained a CARFAX vehicle history report for the BMW. The report noted the mileage amounts in excess of 200,000 relative to the BMW when it was serviced in January and April 2011 at BMW of Annapolis, along with noting the subsequent odometer reading of 105,061 miles when it was sold at auction in September 2011. Because of the discrepancy, the CARFAX report warned, "There are signs of potential odometer rollback here, so verify the mileage with the seller."

Neither the testimony of A1's Kaufman or Katz revealed that they were aware of the January and April 2011 service records from BMW of Annapolis or the CARFAX report showing that the BMW had over 200,000 miles on its odometer at one time. Additionally, Katz

---

[3] Kaufman explained that vehicle auction companies orchestrate the sales through a bidding process, either in person and/or online, and that the auction companies, for a fee, will conduct post-sale inspections, which can result in the highest-bid purchaser being permitted to withdraw from the sale if the vehicle does poorly in the inspection. Kaufman stated that A1 chose not to pay the fee for an inspection in this instance because the BMW was being sold at auction "as is," which apparently precluded A1 from backing out of the deal even had there been an unsatisfactory inspection.

[4] Kaufman testified that paperwork reflected that the BMW had been towed to the location where the repairs were made. Also, he agreed that a document concerning the repairs indicated that the BMW had 105,222 miles on it when received at the repair facility.

testified as follows at his deposition in regard to AutoCheck, which is another company that provides vehicle history reports:

> In this instance, if a vehicle was noncompliant pursuant to AutoCheck, it means it's non-financeable. This particular vehicle [BMW] was compliant in accordance with AutoCheck, therefore, financed through Credit Acceptance. Had it not been compliant or had an odometer discrepancy or a rollback, it would not be financeable.

> \* \* \*

> We can pull a report . . . . [A]ll of the time when a vehicle is financed through Credit Acceptance, Credit Acceptance has criteria, and one of the criterias to financing through them is that there are no – there isn't any previous frame damage, the vehicle has not been rebuilt or salvaged, and there are no other taints to the title such as odometer rollbacks or the like.

> \* \* \*

> Credit Acceptance uses AutoCheck in doing a vehicle history on the particular unit or vehicle and will then advise us as the dealer whether or not it's compliant with their program.

> \* \* \*

> Credit Acceptance will state a reason of its noncompliance should it be noncompliant. In this case, the vehicle was a hundred percent compliant.

Plaintiff testified in his deposition that the BMW had been purchased "as is," that he did not have personal knowledge regarding whether the 200,000-plus mileage readings on the January and April 2011 service records from BMW of Annapolis were accurate, that, contrary to an allegation in the complaint, A1 had not indicated that it had reviewed a CARFAX report prior to the sale, that plaintiff did not know whether the odometer had actually been rolled back, that he did not have any information indicating that A1 had been aware of any odometer discrepancy or rollback, and that he did not believe that any one from A1 had made an untrue statement concerning the BMW. When asked what A1 did that was wrong, plaintiff testified:

> It's my opinion that some wrongdoing happened between the time they got the vehicle and the time that I purchased the vehicle, and that opinion is formed by speaking with the mechanic and him saying that these kind of repairs shouldn't be needed on a car, especially a BMW, with this amount of miles on it.

The lower court record has two versions of the purchase agreement for the BMW. One is signed by plaintiff and his wife with no handwritten language indicating that the BMW was being sold "as is," although the document contained a typed general disclaimer of all warranties by A1, subject to any service contracts sold on A1's own behalf. The second version of the purchase agreement contained the same signatures by plaintiff and his wife as found on the earlier version, but the second version was now also signed by an A1 representative and it contained a handwritten scribbling indicating that the BMW was being "sold as is." In affidavits

executed by plaintiff and his wife, they both averred that "the hand-written 'as is' language was not included when [they] signed" the purchase agreement. An application for Michigan title and registration noted in type that the BMW was "SOLD AS IS."

In the proceedings below, the trial court granted summary disposition in favor of A1 with respect to all three of plaintiff's causes of action. The trial court found, as a matter of law, that the BMW was purchased "as is," that there effectively were no representations or guarantees by A1 in light of the "as is" transaction, and that A1 did not engage in any wrongdoing. The trial court subsequently granted A1's motion for sanctions that was brought pursuant to MCR 2.114, MCR 2.625, and MCL 600.2591. The trial court essentially ruled that all three counts lacked evidentiary support, chiefly because the sale constituted an "as is" transaction. At a later evidentiary hearing regarding the amount of the sanctions, the trial court stated that it could not find that plaintiff's complaint had been frivolous at the inception of the case. However, the trial court did conclude that A1 was entitled to sanctions for attorney fees and costs incurred after April 20, 2015, which was the date A1's attorney sent a letter to plaintiff's counsel requesting voluntary dismissal of the case on the basis that plaintiff had testified at his deposition that the BMW was purchased "as is" and that he did not have any information that A1 had made misrepresentations. The trial court awarded A1 $17,657 in sanctions. Plaintiff appeals as of right.

We review de novo a trial court's ruling on a motion for summary disposition. *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 489; 835 NW2d 363 (2013). With respect to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), set forth the governing principles:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

We initially speak to the issue regarding whether the BMW was sold "as is," which matter played an integral role in the trial court's rulings, and which issue the parties devote significant time and attention. There was evidence that the BMW was sold "as is," including

plaintiff's deposition testimony. We do note that plaintiff and his wife purchased an extended warranty on the BMW, which evidently was inadequate to cover or did not encompass all of the necessary repairs as claimed by plaintiff.[5] Regardless, A1, the trial court, and even plaintiff seemed to misapprehend that "as is" clauses or agreements with respect to a sale of personal or real property do not provide an avenue to escape liability when fraud is actually committed. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 32-33 n 16; 331 NW2d 203 (1982) ("An 'as is' clause does not preclude a purchaser from alleging fraud or misrepresentation as a basis for rescission."); *Popielarski v Jacobson*, 336 Mich 672, 686-687; 59 NW2d 45 (1953) ("as is" clause is "ineffective against fraud"); *Bergen v Baker*, 264 Mich App 376, 390 n 5; 691 NW2d 770 (2004) (" 'as is' clauses do not insulate a seller from liability where the seller makes fraudulent representations"); *M & D, Inc v McConkey*, 231 Mich App 22, 32; 585 NW2d 33 (1998) (It is a "well-established rule that if a seller makes fraudulent representations before a purchaser signs a binding agreement, then an 'as is' clause may be ineffective."); *Lorenzo v Noel*, 206 Mich App 682, 687; 522 NW2d 724 (1994) (rejecting the defendant's argument that an "as is" clause barred the plaintiff's action for fraud and misrepresentation by nondisclosure); *Clemens v Lesnek*, 200 Mich App 456, 460-461; 505 NW2d 283 (1993) ("as is" clause does not preclude action for damages for fraudulent concealment of defects). The trial court's singular reliance on the determination that the BMW was sold "as is" in summarily dismissing plaintiff's fraud and misrepresentation claims was in error.

Nevertheless, plaintiff's lawsuit cannot survive, and A1 is entitled to an order granting its motion for summary disposition. The misrepresentation claims, whether intentional, negligent, or innocent, required evidence of a false representation. *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 284; 803 NW2d 151 (2011) (reciting the elements of intentional misrepresentation); *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 621; 769 NW2d 911 (2009) (discussing innocent and negligent misrepresentation). With respect to the ODS, if the representation was merely that the BMW had 105,091 miles on it, there would exist, in our view, a genuine issue of material fact whether that representation was false, considering the service records from BMW of Annapolis and the CARFAX report, which documents indicated that the car had well over 200,000 miles on it in early 2011.[6] However, the representation was

---

[5] Plaintiff's wife testified in her deposition that the BMW was purchased "as is," but then added that they had "purchased a warranty." She later explained that the warranty, while being offered in the transaction with A1, was issued by a separate company, not A1.

[6] A1 argues that many of the documents submitted by plaintiff, including the service records from BMW of Annapolis and the CARFAX report, constitute inadmissible hearsay that cannot be considered for purposes of summary disposition. In *Maiden v Rozwood*, 461 Mich 109, 123; 597 NW2d 817 (1999), our Supreme Court stated that documentary evidence submitted in regard to a motion for summary disposition must be admissible as to "content or substance." The Court explained that "[t]he evidence need not be in admissible form," for example, an affidavit. *Id.* at 124 n 6. The pertinent substance or content of the service records and CARFAX report pertained to the BMW showing mileage on its odometer that exceeded 200,000 miles at one time, which evidence would generally be admissible, assuming that the evidence was presented at trial in a proper manner and with a proper foundation. And, given the evidence of a subsequent lower mileage reading, a reasonable inference that can be reached is that the odometer was rolled back by someone.

couched in terms of the BMW's mileage being 105,091 *to the best of A1's knowledge*. Therefore, there could only be a true misrepresentation if (1) the BMW did not have 105,091 miles on it and (2) A1 had knowledge that the odometer reading was inaccurate.[7]

We agree with plaintiff that fraud can be established by circumstantial evidence and can be inferred from the evidence. *Foodland Distributors v Al-Naimi*, 220 Mich App 453, 458; 559 NW2d 379 (1996) ("In other words, fraudulent or wrongful conduct may be inferred from other evidence."). There was no evidence that A1, at or before the time of the sale, was aware of the service records from BMW of Annapolis or the CARFAX history report, which documents indicated that the BMW had well over 200,000 miles on it at one time. And there is no basis to infer from the evidence that A1 had knowledge of the service records or the CARFAX report. We also note co-owner Katz's testimony that an AutoCheck history report would have been done by Credit Acceptance in financing the sale and that, because plaintiff and his wife obtained financing, no issue regarding the odometer mileage had been discovered. This testimony was not contradicted, nor did plaintiff present evidence that an AutoCheck report, as opposed to a CARFAX report, would have revealed the odometer discrepancy. The only evidence that might conceivably support plaintiff's misrepresentation claims was Kaufman's testimony that the timing repairs done on the BMW at A1's direction are "[n]ot often" seen in vehicles with 100,000 miles. We conclude that this evidence is just too tenuous to create a genuine issue of fact with respect to whether A1 had knowledge of an odometer inaccuracy or rollback. We reject plaintiff's reliance on the evidence that the BMW needed extensive repairs, that it had to be towed to the repair facility, that documents from the repair facility showed 105,222 miles instead of 105,091 miles on the BMW, that the car had a history of mechanical problems, as reflected in part by the notations of the service-engine light being on, that "as is" language was improperly added to the purchase agreement after plaintiff and his wife executed it, that A1 knew that the BMW was previously exempt from mileage reporting, and that A1 was aware that prior owners had not checked boxes affirming the accuracy of the odometer readings on auction documents. We simply do not see how this evidence, even taken together, gives rise to a reasonable inference that A1 knew that the ODS was inaccurate, such that a genuine issue of material fact exists on the issue.[8] In sum, all of plaintiff's claims predicated on a misrepresentation in the ODS, which encompass both common-law misrepresentation counts in full and some of the MCPA allegations, fail as a matter of law.

---

[7] We recognize that given the proper framing of the "misrepresentation" in this particular case, requiring examination of whether A1 had knowledge of the apparent ODS inaccuracy, the "negligent" and "innocent" aspects of count II's misrepresentation claim become meaningless.

[8] In speaking in terms of an inaccuracy, we are comparing the mileage in the ODS to the 200,000-plus miles referenced in the 2011 service records and the CARFAX report. In regard to the small mileage discrepancy between the 105,091 amount and the 105,222 amount, plaintiff has not shown that the 131 mile difference was material to the transaction or that he and his wife would not have purchased the car had they known it had 131 more miles on it. *Lawrence M Clarke*, 489 Mich at 284 (materiality requirement). Indeed, plaintiff does not even argue that the difference was material. Moreover, it is not even clear from the record that the BMW did not show an odometer reading of 105,222 miles when plaintiff and his wife test drove the vehicle and first took possession.

-7-

With respect to the remaining MCPA claims, citing MCL 445.903(1)(z),[9] plaintiff first argues that A1 charged him and his wife a grossly excessive price for the BMW. Plaintiff, however, did not make this allegation in his complaint, and therefore, we reject it. Moreover, plaintiff failed to adequately support this claim with pertinent documentary evidence on BMW pricing, relying solely on the prior auction sales in comparison to the price paid by plaintiff and his wife. Citing MCL 445.903(1)(bb),[10] plaintiff next argues that A1 made a material misrepresentation of fact by telling plaintiff that the BMW was "special," as it had been purchased for Katz's sister. The comment about the BMW being "special" was not a statement or representation *of fact*, and the assertion that A1 bought the BMW at auction for Katz's sister was never disputed. Accordingly, this claim fails as a matter of law.

Citing MCL 445.903(1)(s) and (cc),[11] plaintiff contends that A1 failed to disclose certain material facts. Plaintiff points to A1's silence regarding: prior owners not checking the boxes certifying the accuracy of the odometer readings in auction documents; the indications in the title that the BMW was exempt relative to disclosing the vehicle's mileage; the timing repair work performed on the car, which was not typical of a vehicle driven 100,000 miles; the service-engine light being on in the past; and the fact that the BMW was not operational when A1 first obtained it. With respect to the odometer disclosure exemptions stated on the back of the title in relation to some of the earlier transactions, plaintiff and his wife at the time of the sale signed the back of the title as transferees. Therefore, those exemptions were observable by and effectively disclosed to plaintiff and his wife, and they proceeded in finalizing the sale. In regard to the ODS boxes in the auction documents, as noted earlier, there were no boxes dedicated to a certification that the odometer reading was accurate. To the extent that plaintiff means to allude to the lack of a signature in the ODS section of the auction documents, his argument still fails. First, with respect to the Manheim auction transaction in which Lifestyle Auto Broker sold the BMW, wherein the odometer discrepancy first appeared, Lifestyle Auto Broker *did certify* that the odometer reading was accurate. Regardless, plaintiff did not submit any evidence indicating that disclosure would have impacted the sale, thereby failing to create an issue of fact regarding materiality. See *Zine v Chrysler Corp*, 236 Mich App 261, 283; 600 NW2d 384 (1999) ("[A] material fact for purposes of the MCPA would . . . be one that is important to the transaction or affects the consumer's decision to enter into the transaction."). And having signed the back of

---

[9] Under MCL 445.903(1)(z), an unfair, unconscionable, or deceptive act or practice includes "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold."

[10] Under MCL 445.903(1)(bb), an unfair, unconscionable, or deceptive act or practice includes "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."

[11] Under MCL 445.903(1)(s), an unfair, unconscionable, or deceptive act or practice includes a failure "to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." And MCL 445.903(1)(cc) concerns a failure "to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."

-8-

the title that showed the odometer disclosure exemptions, which reflected a lack of assurance concerning the BMW's mileage, plaintiff is in no position to genuinely claim that disclosure of the unsigned ODS sections in the auction documents would have affected the decision to enter into the transaction.

Finally, with respect to the BMW's poor condition when it first came into A1's possession and the repairs that A1 made on the vehicle, we initially note, again, that A1 is a *used* car dealer, so it should not come as any surprise that it regularly conducts, to varying degrees, maintenance and repairs on vehicles prior to sale, which is consistent with the deposition testimony of Katz and Kaufman. Also, the BMW was over 10 years old. Therefore, we have trouble concluding that the claimed omissions tended to mislead or deceive plaintiff and his wife. And neither plaintiff nor his wife testified or averred that these particular omissions would have affected the decision to enter into the transaction, creating, once again, a materiality problem. Further, it is proper to construe the provisions of the MCPA with reference to the tort of fraud under the common law, *Zine*, 236 Mich App at 282-283, and "in order to prove a claim of silent fraud, a plaintiff must show that some type of representation that was false or misleading was made," *M & D, Inc*, 231 Mich App at 31. This is consistent with MCL 445.903(1)(cc), which refers to a failure to reveal material transactional facts "in light of representations of fact made in a positive manner." Plaintiff has not directed us to any documentary evidence, sufficient to create a genuine issue of material fact, showing that defendant Taylor or anyone from A1 made some type of representation that was factually false or misleading with regard to the BMW's pre-sale condition and repairs, or showing that plaintiff and his wife even made inquiries into those matters. Plaintiff testified that the salesman, Taylor, stated that the BMW was "a very good vehicle" and that A1 "had some maintenance done to the vehicle." Plaintiff did not indicate that he asked Taylor regarding the nature of the maintenance. Although we believe it to be a somewhat close call, the "very good vehicle" and maintenance-related comments by Taylor did not suffice to trigger an obligation under the MCPA to reveal or disclose the information that the BMW had mechanical problems at one time, had to be towed to the repair facility, and had repairs made to it, including in relation to the BMW's timing. Indeed, the BMW drove just fine when sold and maintenance work had been performed on the car.[12] In sum, plaintiff's MCPA count fails as a matter of law.

With respect to sanctions, the trial court ultimately determined that plaintiff's complaint was not frivolous nor otherwise deserving of sanctions when filed, leaving us to question whether the trial court had any authority to award sanctions under MCR 2.114(D) and (E), MCR 2.625(A)(2), and MCL 600.2591. See *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008) (violation of MCR 2.114 is assessed at the time a claim was filed); *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002) ("To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made."). "That the alleged facts are

---

[12] Had defendant Taylor stated, for example, that the BMW's spark plugs were replaced without saying anything more, thereby suggesting that this was the only repair, there would be a sound argument that a duty under the MCPA to disclose all of the repairs would arise in order to avoid deceiving or misleading plaintiff and his wife.

later discovered to be untrue does not invalidate a prior reasonable inquiry." *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003).

Furthermore, the trial court's award of sanctions premised on plaintiff's deposition testimony and defense counsel's associated demand letter for a voluntary dismissal reflected questionable logic. Plaintiff's deposition testimony essentially indicated that he did not have any personal knowledge or information that Taylor or A1 engaged in fraud or made misrepresentations. This did not mean that plaintiff's counsel did not have documentary ammunition to attempt to show, through circumstantial evidence and reasonable inferences that flowed from the evidence, that A1 committed fraud and violated the MCPA.

Finally, while plaintiff's claims were ultimately unsuccessful and his proffered legal analysis rejected, the trial court clearly erred in finding that the litigation was, at any stage, frivolous, as defined in MCL 600.2591(3)(a), or not well grounded in fact or unwarranted by existing law, MCR 2.114(D) and (E). See *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002) (finding that action is or is not frivolous is reviewed for clear error); *Jerico Constr*, 257 Mich App at 36 (not every error in legal analysis is frivolous, and while a claim may be unsuccessful, it does not necessarily mean that it was groundless). The apparent discrepancy of over 100,000 miles in regard to the BMW's mileage, which logically suggested that a rollback had occurred in the past, and the necessary timing repairs made to the vehicle provided adequate evidence to avoid a finding of frivolousness.

Affirmed with respect to summary dismissal of plaintiff's complaint and vacated in regard to the award of sanctions. We do not retain jurisdiction. Neither party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause