*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARDRED BARNES,

      Plaintiff-Appellant,

v

ARBOR CIRCLE APARTMENTS,

      Defendant-Appellee.

UNPUBLISHED
May 9, 2019

No. 342966
Washtenaw Circuit Court
LC No. 17-000121-AV

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the order of the circuit court affirming the district court's order granting summary disposition in favor of defendant. We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff was a tenant of defendant. In 2013, plaintiff signed a lease agreement (the lease) with defendant. The lease contained the following provisions regarding insurance:

> 17. RENTERS INSURANCE. Management shall not be required to obtain insurance on the Residents' household and personal effects. IT IS REQUIRED THAT THE RESIDENTS OBTAIN A STANDARD HOMEOWNERS RENTAL POLICY INCLUDING LIABILITY WITH PROPERTY DAMAGE COVERAGE (HO-4 POLICY) TO INSURE HOUSEHOLD AND PERSONAL EFFECTS AGAINST FIRE, WATER AND OTHER HAZARDS.

---

[1] *Barnes v Arbor Circle Apartments*, unpublished order of the Court of Appeals, issued September 11, 2008 (Docket No. 342966).

Residents agree to hold Management harmless from any and all damages caused by Residents or their guest originating within the residence. Residents agree that all personal property in the residence of the building of which the residence forms a part, shall be kept at the risk of the Residents only, and Management, its officers, employees or agents shall not be liable for any damage or theft. . . . To the extent not expressly prohibited by law, Management or its officers, employees or agents shall not be liable for any injury to person, loss by theft or otherwise, or damage to property.

\* \* \*

19. INSURANCE/SUBROGATION. Residents release Management from any liability for loss, damage or injury caused by fire or other casualty for which insurance (permitting the waiver of liability and waiver of issuer's right of subrogation) is carried by Residents to the extent of any recovery by Residents under such policy. Residents are not an insured party with respect to any insurance coverage maintained by Management and are specifically subject to insurance subrogation with respect to any damages caused by Residents.

The lease also provided that defendant "shall not be responsible or liable for any injury, loss, property damage, bodily injury, or criminal acts to the residents . . . which are caused by the negligence, acts or omissions or other illegal conduct of other residents, members of their family, their guests or invitees, trespassers or others." The lease contained a provision providing that any modifications or amendments to the agreement "shall only be binding and effective if made in writing and signed by the Residents and by an authorized representative of Management. The on-site leasing agents, Managers, or Maintenance personnel cannot modify this lease."

Plaintiff obtained a renter's insurance policy from First American Property & Casualty Insurance Company (First American) that was in effect from January 29, 2013 to January 29, 2014. Plaintiff renewed his lease with defendant under the existing terms in December of 2013, extending the lease term to January 31, 2015. However, plaintiff did not renew his First American policy, which expired on January 29, 2014.[2] At some point in 2014, plaintiff received a written circular from defendant, which stated:

PER OUR NEW POLICY REGARDING RENTERS INSURANCE AS OF NOVEMBER 1, 2013[,] WE ARE REQUIRING ALL OF OUR POLICY

---

[2] Plaintiff testified at his deposition that he purchased policies from other companies after his First American policy lapsed, although he could not recall many of the details of these policies. Plaintiff also testified that he believed he never had a "gap" in his renter's insurance before receiving the circular that is the subject of this dispute. The record does not indicate what policy of plaintiff's, if any, was in effect when plaintiff received the circular, or when the last policy purchased by plaintiff lapsed; however, it is undisputed that at the time of the fire plaintiff was not insured under a renter's insurance policy that he had purchased.

HOLDERS TO PUT US ON AS "ADDITIONAL INTEREST" AS ARBOR CIRCLE 2277 GROVE YPSILANTI MI 48198[.] THEY MUST ALSO HAVE THE NEW LIABILITY REQUIREMENT OF $100,000.

YOU MAY CONTACT ME AT 734-483-2332 AND ALSO FAX ME THE POLICY CHANGE AT 734-483-0523.

PLEASE NOTE, ON 6/1/2014[,] ALL RESIDENCE [SIC] WITH OUT [SIC] THE PROPER FORMS IN THEIR FILE WILL AUTOMATICALLY BE ENROLLED INTO THE MASTER POLICY. THE MONTHLY CHARGE FOR THE MASTER POLICY IS $45.00 AND WILL BE ADDED TO YOUR ACCOUNT ON THE FIRST OF EVERY MONTH. THE AMOUNT WILL OCCUR [SIC] LATE FEES IF NOT PAID BY THE 5TH OF THE MONTH.

THANK YOU,

JOE RICHMOND
PROPERTY MANAGER
ARBOR CIRCLE APARTMENTS

On January 15, 2015, there was a fire in a unit neighboring plaintiff's apartment. The fire caused extensive smoke and water damage to plaintiff's apartment, forcing plaintiff to move out of the apartment. Plaintiff also lost most of his belongings.

Plaintiff brought suit against defendant in October 2015, alleging that defendant was liable for damages to his personal property and costs incurred in finding alternate living arrangements. Plaintiff contended that defendant had either agreed to insure plaintiff's personal property or had misrepresented that plaintiff would be covered by defendant's insurance policy. The complaint asserted counts for breach of contract, material misrepresentation, and violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*.

Plaintiff testified at his deposition that he was aware that the lease required him to maintain renter's insurance. However, he testified that he believed after reading defendant's circular that paying the additional $45 per month had the effect of adding him to defendant's "master policy" and providing him with renter's insurance, eliminating the need to purchase his own; plaintiff also testified that he be made the extra payments. Plaintiff admitted that he never spoke with anyone about the circular, and that defendant did not ever explicitly inform him that he was covered by a renter's insurance policy by virtue of his extra payments. Plaintiff was never provided with, never asked about, and never saw the "master policy" referred to in the circular.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). In support of its motion, defendant attached an affidavit from Paul Bastas, the director of finance for Kaftan Enterprises, Inc, stating that plaintiff had never paid "any premiums for any insurance coverage to be provided by Defendant." The affidavit also stated that even if plaintiff had paid premiums for insurance provided by defendant, the coverage provided would have been general liability coverage, not coverage for property damage.

At the hearing on defendant's motion, plaintiff's counsel primarily argued that plaintiff's MCPA claim should survive summary disposition. The parties disputed whether plaintiff had actually paid the extra $45 dollars per month; further, defendant's counsel argued that even if plaintiff had paid the money, the circular's language was not misleading and did not modify or purport to modify the lease, which clearly stated that plaintiff was required to obtain renter's insurance and that defendant would not be liable for the kinds of losses plaintiff suffered as a result of the fire. At the conclusion of the hearing, the district court ruled in favor of defendant on plaintiff's breach of contract and misrepresentation claims, and took defendant's motion under advisement with respect to plaintiff's MCPA claim. The district court entered an order granting defendant summary disposition on plaintiff's breach of contract and misrepresentation claims.

The district court later entered a separate opinion and order granting summary disposition in favor of defendant on plaintiff's MCPA claim. It denied plaintiff's motion for reconsideration, and plaintiff then appealed the order granting summary disposition on his MCPA claim to the circuit court.

After a hearing and supplemental briefing, the circuit court issued an order affirming the district court, stating in pertinent part:

> Appellant claims that he reasonably interpreted the circular to promise that if he failed to obtain insurance for his property, appellee would do so. Appellee's failure to insure appellant's property, claims appellant, violated the MCPA. Specifically, appellant's complaint alleges that the circular quoted above violated MCL 445.903(1)(n), (q), and (s), as appellee caused "a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;" represented or implied that a benefit would be provided when the merchant knew or had reason to know it would not be provided; and "[failed] to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."
>
> Reviewing the trial court's decision de novo, and giving the benefit of all inferences to appellant as the non-moving party, this Court agrees with appellee and the trial court that summary disposition was proper. Appellee required appellant to carry insurance not out of concern for appellant, but to ensure that appellee was protected. Appellee specified *liability* limits of $100,000, and required that appellee be listed as an additional interest. While appellant urges that "renter's insurance" is intended solely for the benefit of the renter, it also provides liability coverage. The record demonstrates conclusively that appellee's interest was not in insuring appellant's belongings, but in liability coverage – ensuring that appellee is protected from any activity or incident caused by renter. Moreover, the lease makes clear that appellee is not responsible to appellant for any damage to appellant's property. The circular does nothing to change that.

Plaintiff moved for reconsideration, which the circuit court denied, stating in relevant part:

In its opinion and order affirming the trial court's dismissal of plaintiff/appellant's Michigan Consumer Protection Act (MCPA) claim, the Court expressly noted that the only claim before it was the MCPA claim. The appellee, the Court continued, required appellant to carry at least $100,000 in liability insurance with appellant listed as an additional interest. To clarify the Court's opinion and order, this Court holds that the language of the contract, in the circumstances under which plaintiff signed it – which included a consideration of why the landlord required tenants to purchase renter's insurance – would not have misled a reasonable potential tenant as to whether the tenant was required to purchase such insurance.

This appeal followed. Plaintiff's appeal relates only to the award of summary disposition on his MCPA claim.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10)[3] if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We review de novo a circuit court's decision when it sits as an appellate court. *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). We review de novo the interpretation of

---

[3] Neither lower court specified whether it found that summary disposition of plaintiff's MCPA claim was appropriate under MCR 2.116(C)(8) (failure to state a claim) or (C)(10) (no genuine issue of material fact). Because the district court made reference to the lack of a "factual or legal basis upon which a finding can be made that the Defendant violated the Michigan Consumer Protection Act," and its duty to "review the proffered testimony and contract in a light most favorable to the non-moving party and decide whether reasonable jurors could reach different conclusions regarding the clarity of the language," rather than its duty to take all well-pleaded factual allegations by plaintiff as true, see *Kyocera Corp v Hemlock Semiconductor,* Inc, 313 Mich App 437, 445; 886 NW2d 445 (2015), we will consider the grant of summary disposition as having been made under MCR 2.116(C)(10). *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009).

contract language. *Kyocera Corp v Hemlock Semiconductor,* Inc, 313 Mich App 437, 445; 886 NW2d 445 (2015).

## III. ANALYSIS

Plaintiff argues that summary disposition on his MCPA claim was inappropriate because a genuine issue of material fact existed regarding whether the language of the circular would have misled a reasonable person to believe that they would be covered by a renter's insurance policy owned by defendant if they paid an additional fee. We agree.

The MCPA "prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." *Zine v Chrysler* Corp, 236 Mich App 261, 270-271; 600 NW2d 384 (1999). Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful." MCL 445.903(1). "Trade or commerce" includes the rent or lease of real property. MCL 445.902(d). The MCPA provides various definitions of unfair, unconscionable, or deceptive methods, acts, or practices. See MCL 445.903(1)(a)-(kk). On appeal, plaintiff argues that defendant's distribution of the circular was an unfair or deceptive act, under three of those definitions—those being MCL 445.903(1)(n), (q), and (s). The subsections provide:

> (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:
>
> * * *
>
> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.
>
> * * *
>
> (q) Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.
>
> * * *
>
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

However, we agree with defendant that plaintiff did not allege in his complaint or argue in the district court that defendant had violated MCL 445.903(1)(s); nor did the district court address a potential violation of this subsection. We will therefore limit our analysis to plaintiff's arguments concerning subsections (n) and (q). See *Dacon v Transue,* 441 Mich 315, 329; 490 NW2d 369 (1992) (noting that a complaint must provide reasonable notice to the opposing

-6-

parties); *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002) (noting that this Court generally declines to consider issues raised for the first time on appeal).[4]

Under MCL 445.903(1)(n), a party may cause "a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies" in another party by either affirmative misrepresentation or omission of material facts. *Zine*, 236 Mich App at 283. A fact is "material" under the MCPA if it is "one that is important to the transaction or affects the consumer's decision to enter into the transaction." *Id.* at 283. A "transaction" under the MCPA includes the act of making a lease agreement. *Id.* at 280 (citations omitted). A party may violate MCL 445.903(1)(n) by "representations made both before and after the transaction has been completed."

Here, plaintiff argues that a genuine issue of material fact existed as to whether the circular caused a "probability of confusion or of misunderstanding" regarding whether he was covered by a renter's insurance policy despite not having independently purchased such a policy and despite the fact that maintaining such a policy was a condition of his lease. We agree.

A lease agreement is a contract, and should be interpreted according to its plain and ordinary meaning. See *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). We agree with defendant that the language of the lease agreement is unambiguous in several ways—for example, that a modification of the lease must be made in writing, signed by the residents, and by "an authorized representative of Management," that the lease requires a resident to obtain a "standard homeowner's rental policy," and that defendant is not liable under the lease for damage to plaintiff's personal property. There is no material question of fact regarding whether the circular could be viewed as a modification or amendment of the lease. Nor is there a material question of fact regarding whether, under the lease agreement, defendant had any obligation to insure plaintiff's personal property; in fact, the lease states that "Residents are not an insured party with respect to any insurance coverage maintained by Management."

The circular, however, is another matter. The first paragraph of the circular refers to a "new policy regarding renters[sic] insurance" and requires all "policy holders" to add defendant to their renter's insurance policies and carry a minimum liability requirement of $100,000. The third paragraph of the circular states in relevant part that "all residence [sic] with out [sic] the proper forms in their file will automatically be enrolled into the master policy. The monthly charge for the master policy is $45.00 and will be added to your account on the first of every month." Therefore, the only type of insurance policy specifically mentioned in the circular is a renter's insurance policy. The reference to a "master policy" later in the circular could reasonably be read as referring to a renter's insurance policy, rather than, as defendant asserts, as obviously referring to a liability insurance policy that covers defendant only. In essence, the circular can be read as offering tenants a choice—either to add defendant to an existing renter's insurance policy, or to buy in to a "master policy" of renter's insurance obtained by defendant.

---

[4] If appropriate, the district court may consider on remand whether to grant plaintiff leave to amend his complaint under MCR 2.118 to assert a claim under MCL 445.903(1)(s).

In this regard, defendant did itself no favors by using the phrase "new policy" in the first paragraph of the circular, or by referring to a "master policy" seemingly in juxtaposition with preceding references to "renter's insurance" and "policy holders." A reader of the circular could reasonably have come to the conclusion that defendant had recently obtained a "new" "master policy" of renter's insurance, perhaps in response to a "new liability requirement," and was offering tenants an opportunity to buy in to this policy rather than maintain their own policy of renter's insurance.

This interpretation of the circular is not contradicted by the language of the lease. Although the lease does state that residents "are not an insured party with respect to any insurance coverage maintained by Management," it does not, by its language, prevent defendant from *ever* adding a resident to any new policies of insurance it might obtain in the future, or from later offering a resident the opportunity to purchase enrollment in a policy. And, although the lease does require residents to obtain renter's insurance, it is silent as to any specific penalty for failure to comply with this provision. This is unlike, for example, the specific penalties provided for violating the requirement that residents place the utility services of an apartment in their own name, or for violating the no-pets provision. The circular could be read as clarifying or making explicit that the "penalty" for failure to maintain an independent renter's insurance policy would be the payment of $45 per month to be enrolled in defendant's policy—which, as defendant notes, would cost about four times as much annually as plaintiff's First American policy.[5] And because the circular could be read as providing a *way* for a resident to obtain renter's insurance, it is not in conflict with the provision of the lease providing that a resident obtain such a policy.

If plaintiff had not, in fact, paid the additional fee, then, even reading the circular as an offer to provide renter's insurance, it is doubtful that plaintiff could have been confused about whether he possessed renter's insurance coverage through defendant; simply put, there is no reasonable reading of the circular that would support the conclusion that plaintiff would receive renter's insurance from defendant at no charge. Resolution of this disputed factual issue was inappropriate at the summary disposition stage; therefore, to the extent that defendant argues that we should find that plaintiff did not pay the additional $45 per month, we decline to affirm the lower courts' orders on that basis. See *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 625; 739 NW2d 132 (2007) (noting that "courts may not resolve factual disputes or determine credibility in ruling on a summary disposition motion") (citation omitted).

In sum, we believe that reasonable minds could differ about whether the circular represented that a resident who paid the additional $45 per month would be covered by a renter's

---

[5] Several of the specific penalties listed in the lease are similar, i.e., if residents do not place the primary utilities of a residence in their own name, then defendant would bill them a pro-rata share of the utility charge for the entire building; if a resident violates the pet policy, the resident would be charged $100 per month from the date of occupancy. Although not precisely identical to the language used in the circular, the lease does provide, in general terms, that if a resident fails to comply with certain provisions, then the defendant will essentially do it for them and charge them an additional fee for its trouble.

insurance policy owned by defendant. *Allison*, 481 Mich at 425. A genuine issue of material fact exists regarding whether the circular caused a "probability of confusion or of misunderstanding" as to plaintiff's legal rights in the event of fire. MCL 445.903(1)(n). Summary disposition on plaintiff's MCPA claim was therefore inappropriate with regard to that subsection, and we reverse the district court's order granting summary disposition in favor of defendant on plaintiff's claim under this subsection of the MCPA.

The case for a claim under MCL 445.903(1)(q), which relates to the timeliness with which the subject of a consumer transaction will be provided, is much less compelling. Plaintiff presented no evidence that the circular represented or implied that renter's insurance would be provided promptly, at a specified time, or within a reasonable time despite defendant knowing, or having reason to know, that it would not; rather, the confusion that may have arisen from the circular related to the type of insurance coverage the enrollment in the "master policy" would provide and who would be the beneficiary of that policy. We conclude that no genuine issue of material fact exists with regard to plaintiff's claim of a violation of MCL 445.903(1)(q), and affirm the district court's grant of summary disposition in favor of defendant on plaintiff's claim under this subsection of the MCPA.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-9-