*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAROLE ELIZABETH SELTZ,

        Plaintiff-Appellant,

v

FORD MOTOR COMPANY,

        Defendant,

and

NORTHGATE FORD, INC.,

        Defendant-Appellee.

UNPUBLISHED
November 5, 2019

No. 341600
Wayne Circuit Court
LC No. 15-015079-NZ

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's grant of summary disposition in favor of defendant Northgate Ford, Inc., in this case involving claims of alleged misrepresentation related to plaintiff's purchase of a 2012 Ford F-150 from defendant.[1] We affirm.

## I. BACKGROUND FACTS

In 2011, plaintiff and her husband, James Seltz (James), began their search for a vehicle that could tow the used fifth-wheel trailer they had recently purchased. James Seltz visited four Ford dealerships gathering information. Ultimately, they settled on a Ford F-150, and both plaintiff and James were present at defendant dealership when they special-ordered the F-150 on

---

[1] Plaintiff also alleged claims against Ford Motor Company in her complaint. The trial court granted summary disposition in favor of Ford Motor Company concerning all claims. Plaintiff does not appeal the trial court's decision with regard to Ford Motor Company.

April 24, 2012. On June 12, 2012, plaintiff signed the Northgate Ford Purchase Agreement and purchased the new 2012 Ford F-150 from defendant. The F-150 did not come with a kingpin hitch to accommodate the fifth-wheel trailer, so plaintiff and James Seltz had the hitch installed by a third-party vendor.

When they towed the fifth-wheel trailer with the F-150, plaintiff and James noticed a vibration during acceleration. Plaintiff reported the vibration to defendant, and defendant performed two separate warranty repairs on the F-150 in an attempt to solve the vibration problem. Eventually, when James brought the F-150 into defendant dealership with the fifth-wheel trailer attached, defendant's mechanic informed him that the F-150 was overloaded. A test drive confirmed the issue. James then took the F-150 and the fifth-wheel trailer to CAT Scales for the purpose of determining the amount of weight bearing on the rear axle. The weight on the rear axle with the fifth-wheel trailer attached was 5,760 pounds. The kingpin weight, which is the amount of weight directly on the trailer hitch, was 3,000 pounds with the fifth-wheel trailer attached and fully loaded with cargo. After learning the weights, James took the F-150 and the fifth-wheel trailer to a different Ford dealership. There, a technician explained that the Gross Axle Weight Rating (GAWR), the upper weight limit the rear axle could withstand without being overloaded, was listed on the manufacturer sticker inside the truck door as 4,050 pounds. Therefore, the rear axle of the F-150 when towing the fifth wheel was bearing 1,710 pounds more than the GAWR and was clearly overloaded.

Plaintiff commenced this action against defendant seeking damages since the F-150 cannot safely tow the fifth-wheel trailer. The trial court granted summary disposition in favor of defendant. Plaintiff now appeals as of right.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Cichewicz v Salesin*, 306 Mich App 14, 21; 854 NW2d 901 (2014). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion for summary disposition brought under subrule (C)(10), the court must examine all documentary evidence presented to it, and drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010). The court reviews the evidence but may not make findings of fact or weigh credibility in deciding a summary disposition motion. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A trial court properly grants the motion when the evidence fails to establish any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). When the language of a statute is clear and unambiguous, this Court "will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011).

This Court reviews for an abuse of discretion a trial court's decision whether to grant leave to amend a complaint. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

### III. MISREPRESENTATION CLAIMS

Plaintiff first argues that the trial court erred in granting summary disposition to defendant on plaintiff's fraud and innocent misrepresentation claims. We disagree.

Michigan law recognizes several common-law doctrines, all loosely gathered under the heading of "fraud," that "may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation." *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). These include "actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Id.* To establish fraudulent misrepresentation, the plaintiff must show:

> (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id.* (quotation marks and citations omitted).]

Innocent misrepresentation is also recognized "if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective[.]" *Id.* at 556 (quotation marks and citations omitted).

In this case, plaintiff's claims of fraudulent misrepresentation and innocent misrepresentation required proof of a false representation. See *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 284; 803 NW2d 151 (2011). Plaintiff alleged that the seller's acts or omissions regarding verbal representations about the F-150's towing capacity and specifically its ability to tow her family's fifth-wheel trailer induced her to enter into the Purchase Agreement.

The Purchase Agreement, executed by plaintiff on June 12, 2012, includes a paragraph entitled "Buyer's Representations," which states:

> I have read the material printed on the back and I understand and agree to it as part of this Order as if it were printed above my signature. *I understand that the front and back of this order comprises the entire agreement affecting this purchase/lease and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized.* I also certify that credit has been either extended by Dealer or arranged by Dealer for the cash down payment unless it appears in writing on the face of this Order. I certify that I am at least 18 years old, and acknowledge receipt of a copy of this Order.

The record shows that plaintiff executed the Purchase Agreement, and therefore she was aware that the sales contract itself comprised the entire agreement between the parties, and further that it provided no warranties about the towing capacity of the F-150. Thus, any testimony by plaintiff or her husband regarding statements made before plaintiff executed the Purchase Agreement did not amount to proof of a false representation. Moreover, as later discussed, plaintiff relied entirely on the Towing Selector Sheet published by Ford Motor Company that explained the towing capacity of the F-150, including specific calculations for towing a fifth-wheel trailer, in deciding to purchase the vehicle—not on any statements by defendant. On this record, plaintiff failed to introduce evidence that would have invalidated the warranty provision in the Purchase Agreement. The warranty provision "comprise[d] the entire agreement" and nullified any other agreement or understanding of any nature, and plaintiff was not entitled to rely on parol evidence to contradict the explicit terms of the Purchase Agreement. *Hamade v Sunoco Inc (R & M)*, 271 Mich App 145, 170-171; 721 NW2d 233 (2006). Plaintiff cannot show that defendant's pre-contract representations to her or her husband induced her to enter the contract for sale when she signed the Purchase Agreement and in doing so agreed that defendant did not warrant or make representations regarding the towing capacity of the F-150. We thus conclude that the trial court did not abuse its discretion in granting defendant's motion for summary disposition on plaintiff's fraudulent and innocent misrepresentation claims.

In light of this conclusion, defendant's alternative arguments for affirmation concerning whether the alleged misrepresentations were technically made to plaintiff or to her husband and whether the economic loss doctrine applies are both moot because the matter fails on the merits. Therefore, we need not address either argument. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

## IV. MICHIGAN CONSUMER PROTECTION ACT

Next, plaintiff argues that the trial court erred by granting summary disposition to defendant on her claims under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. We disagree.

The MCPA "prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." *Zine v Chrysler Corp*, 236 Mich App 261, 270-271; 600 NW2d 384 (1999); MCL 445.903(1). The MCPA defines the phrase "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." *Id*.; MCL 445.902(1)(g). "The intent of the act is to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Zine*, 236 Mich App at 271 (quotation and citation omitted).

The MCPA provides various definitions of unfair, unconscionable, or deceptive methods, acts, or practices. See MCL 445.903(1)(a)-(kk). In her complaint, plaintiff does not call attention to a particular section of the MCPA that she claims defendant violated. Plaintiff generally argues that, on the basis of defendant's alleged misrepresentations about the F-150's towing capacity during the sales process, she expected that the F-150 could safely tow her fifth-

-4-

wheel trailer, but instead struggled with an uncomfortable and unsafe vibration for three years before finding out that the F-150 could not safely tow the fifth-wheel trailer.

A careful review of plaintiff and her husband's depositions is required in this case. Both plaintiff and her husband testified that it was James who handled the search for their new vehicle and interacted with defendant and three other Ford dealerships. James testified that he could not remember which dealership provided him with the Towing Selector Sheet published by Ford Motor Company that explained the towing capacity of the F-150, including specific calculations for towing a fifth-wheel trailer. James testified that one of those Ford dealerships provided him with literature about the towing capacity of F-150 vehicles. When asked if he was "provided any information by [defendant] concerning the towing capacity, the ratings of the vehicle, anything along those lines other than publications from Ford Motor?", James replied, "[j]ust publications from Ford Motor." When asked, "[y]ou didn't rely on any verbal statements from [defendant] other than the fact that the F-150 would work concerning the towing capacity or weight rating or anything like that of this vehicle, is that correct?", James answered, "[j]ust what the documents say." James also testified that he was confident that the F-150 and fifth-wheel trailer fell within the guidelines of the Towing Selector Sheet because it said the F-150 would pull 11,300 pounds, and loaded with cargo his fifth-wheel trailer weighed only 10,000, so he could not understand how the truck could be overloaded.

The record evidence shows that defendant did not communicate anything other than the specific towing information included in the Towing Selector Sheet to plaintiff and her husband. James, whom both parties testified made the purchasing decision for the couple, admitted that he relied only on "what the documents sa[id]" when determining the towing capacity of the F-150. Plaintiff has not presented evidence that the information contained in the Towing Selector Sheet was false, deceptive, or misleading. Instead, the record reveals that James admitted that he could not understand how the F-150 could be overloaded when the weight of the fifth-wheel trailer was less than the overall towing capacity of the F-150. That admission reveals that James did not understand, did not read, or somehow missed the information contained on the face of the Towing Selector Sheet pertaining directly to calculating the GAWR when towing a fifth-wheel trailer:

> Trailer tongue (trailer king pin for 5th-wheel towing) load weight should be 10-15% (15-25% for 5th-wheel towing) of total loaded trailer weight. Make sure vehicle payload (reduce by option weight) will accommodate trailer tongue (trailer king pin for 5th-wheel towing) load weight and weight of passengers and cargo added to towing vehicle. Addition of trailer tongue (trailer king pin for 5th-wheel towing) load weight and weight of passengers and cargo cannot cause vehicle weights to exceed rear GAWR or GVWR. These ratings can be found on the vehicle Safety Compliance Certification Label.

When James eventually calculated the actual weight on the rear axle of the F-150 when the fifth-wheel trailer was hitched, it significantly exceeded that GAWR, which accounted for the overload and explained the vibration. It appears from the record testimony that any confusion about the towing capacity of the F-150 was not caused by defendant, but rather by plaintiff or her husband's failure to understand the information contained in the Towing Selector Sheet that was provided to them before the purchase. A reasonable factfinder could not find

liability under the MCPA on these facts. We conclude that the trial court properly granted summary disposition in favor of defendant on this issue.

## V. MOTOR VEHICLE SERVICE AND REPAIR ACT

Plaintiff next contends that the trial court erred in dismissing her claims under the Motor Vehicle Service and Repair Act (MVSRA), MCL 257.1301 *et seq.*, despite plaintiff having presented evidence that defendant had failed to use reasonable care in diagnosing the driveshaft vibration problem and had recommended an unsafe modification to address the vehicle's inability to tow the fifth-wheel trailer. We disagree.

Under the version of the MVSRA in effect at the time of this lawsuit, MCL 257.1336 stated:

> A facility that violates this act or who, in a course of dealing as set forth in this act or rules, engages in an unfair or deceptive method, act, or practice, is liable as provided in this act to a person who suffers damage or injury as a result thereof in an amount equal to the damages plus reasonable attorney fees and costs. If the damage or injury to the person occurs as the result of a wilful and flagrant violation of this act, the person shall recover double the damages plus reasonable attorney fees and costs.

Thus, to establish a claim under the MVSRA, plaintiff must establish that defendant engaged in some unfair or deceptive act with respect to the repair of the F-150.

The record reflects that defendant first repaired the F-150 in April of 2013. James presented the F-150 (mileage 11,338) to defendant for service work without the fifth-wheel trailer attached on April 10, 2013. He reported a "vibration on takeoff" to defendant. After checking the driveshaft, defendant lubricated it and believed that the repair would solve the vibration problem. James testified that when he picked up the F-150 after the repair, he did not know if the vibration problem was resolved because the fifth-wheel trailer was not attached to the F-150. The repair was considered warranty work and was completed at no charge.

On May 8, 2014, after returning from a trip to Florida, James presented the F-150 (mileage 23,726) to defendant for an oil change service. The fifth-wheel trailer was not attached to the F-150 when he brought it to defendant. When James was speaking to the service manager he complained about the vibration occurring when he accelerated with the fifth-wheel trailer attached to the F-150. Defendant investigated the problem and then replaced the driveshaft on the F-150 the following day, May 9, 2014. James stated that defendant told him that the change in the driveshaft should take care of the vibration problem. Again, the repair was considered work under warranty and was completed at no charge.

In November of 2014, James took the F-150 with the fifth-wheel trailer attached to defendant for the first time. James complained of the same vibration to defendant. Defendant's mechanic looked at the F-150 with the fifth-wheel trailer attached and immediately told plaintiff that the F-150 was overloaded. Defendant's mechanic noted that the back end of the F-150 was angled down when the fifth-wheel trailer was hooked up to it. The mechanic took the F-150 and fifth-wheel trailer on a test drive during which he acknowledged that he could feel the vibration.

Defendant's mechanic suggested plaintiff install an air bag suspension on the rear of the F-150 to bring the rear end up and solve the problem. The estimated installation cost was $1,700. James declined the repair and took the F-150 home. The record reflects that neither plaintiff nor James brought the F-150 to defendant again for repairs.

On this record, plaintiff has failed to provide evidence of any action by defendant upon which a jury could conclude that defendant engaged in unfair and deceptive methods, acts, or practices. Our review of the record reveals that defendant completed the April 2013 and May 2014 repairs in a timely manner and in accordance with the manufacturer's specifications. Plaintiff also argues that defendant failed to properly diagnose the overload issue and that the vibration continued to occur after the repairs. But James admits that he did not bring the F-150 in for service with the fifth-wheel trailer attached until the third service visit in November of 2014. As soon as James presented the F-150 towing the fifth wheel, defendant's mechanic immediately diagnosed the issue on sight, confirmed it with a test drive, and presented James with a solution to the problem. Because plaintiff failed to establish a question of fact regarding whether defendant engaged in some unfair or deceptive act with respect to the repair of the F-150, the trial court properly granted summary in favor of defendant on plaintiff's claim under the MVSRA. *Hengartner*, 132 Mich App at 754-757.

## VI. LEAVE TO AMEND COMPLAINT

Finally, plaintiff contends that the trial court erred when it denied her request for leave to amend her complaint to add a negligence claim against defendant and also to add her husband as an additional plaintiff in the action. We disagree.

Under MCR 2.118(A)(2), a party may amend a pleading by leave of the court and such "[l]eave shall be freely given when justice so requires." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018) (quotation marks and citation omitted; alteration in original). Motions to amend should only be denied for the following particularized reasons:

> (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility." [*Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).]

Delay alone, however, "does not warrant denial of a motion to amend." *Weymers*, 454 Mich at 659. Rather, prejudice as a result of the delay must also be shown.

> [A] trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id*. at 659-660 (footnote omitted).]

When a trial court grants a motion for summary disposition under MCR 2.116(C)(10), it "must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless

the amendment would be futile." *Shah*, 324 Mich App at 209 (quotation marks and citation omitted); see also MCR 2.116(I)(5) ("If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."). An amendment to a pleading "is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Lane*, 231 Mich App at 697.

Plaintiff's proposed amendment to add a negligence claim to the complaint was futile because a negligence claim is barred by the economic loss doctrine. Our Supreme Court adopted the economic loss doctrine in *Neibarger v Universal Coops, Inc*, 439 Mich 512, 527-528; 486 NW2d 612 (1992), to dispose of tort claims arising from contractual disputes. This Court has relied on the doctrine to explain that "an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 52; 649 NW2d 783 (2002). Here, all of plaintiff's negligence allegations arise out of the sale of the F-150 and there is no dispute that the purchase of the F-150 is covered by a contract, namely the Purchase Agreement. Plaintiff makes no claim that defendant owes her a duty beyond their existing contractual relationship. *Id*. As a result, under the economic loss doctrine, plaintiff's proposed negligence claim fails as a matter of law. We conclude that application of the economic loss doctrine disposes of plaintiff's negligence claim because the Purchase Agreement contained the entire contractual agreement between the parties. Accordingly, because the economic loss doctrine barred plaintiff's negligence claim, amendment would have been futile and the trial court's decision to deny leave to amend plaintiff's complaint was appropriate. *Shah*, 324 Mich App at 209.

Additionally, adding James as a plaintiff would also have been futile. Plaintiff raised no cognizable claims in the name of James Seltz that were separate or distinct from plaintiff's own claims; therefore, because the amendment would have simply "restate[d] the allegations already made or add[ed] allegations that still fail to state a claim," the amendment would have been futile. *Lane*, 231 Mich App at 697.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto